[No. A038043. First Dist., Div. Five. Dec. 8, 1987.]

MARC BOLER et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
SHU-YUAN EVERETT, Real Party in Interest.

468

COUNSEL

Robert L. Rediger and Hubbert, Shanley & Lee for Petitioners.

No appearance for Respondent.

Mark H. Van Brussel and Wilke, Fleury, Hoffelt, Gould & Birney for Real Party in Interest.

OPINION

LOW, P. J.—Petitioner Marc Boler is a defendant in a workplace sexual harassment suit brought by his former employee, plaintiff/real party in interest Shu-Yuan Everett. By this petition for extraordinary relief, Boler seeks to set aside an order of the superior court compelling him to answer certain deposition questions concerning his sexual activity with unnamed women not parties to the lawsuit. Because the order is an unjustified overbroad intrusion into the sexual privacy of Boler and his unnamed sexual partners, we issue the requested writ.

Everett's unverified complaint names as defendants Boler, his accounting partnership Christensen, Boler & Company (Company), and Boler's copartners Robert Christensen and Andrew Suihkonen. The complaint alleges that Everett was hired September 5, 1984, as a staff accountant for Company. On March 29, 1985, Boler, a general partner, allegedly requested that Everett "work under [his] personal guidance and supervision." On April 7, Boler allegedly "forced himself sexually on plaintiff," who attempted to resist, but "ultimately yielded to defendant Boler for fear that if she did not she would lose her job." Between April 1985 and September 1985, Boler allegedly forced Everett to have intercourse with him on "approximately four more occasions."

In the first cause of action for sexual harassment, Everett alleges that Boler's "unwelcome sexual advances, demands for and extraction of sexual favors from plaintiff, and his physical and verbal conduct of a sexual nature toward plaintiff, had the effect of unreasonably interfering with plaintiff's work performance and created an intimidating, hostile and offensive work

environment." In her second cause of action, Everett alleges the creation of a "quid pro quo," by which Everett's submission to sexual harassment became an "implicit term or condition" of her continuing employment. She further alleges she resisted additional advances after the September encounter, after which she was terminated November 15, 1985. The third and fourth causes of action seek damages for intentional and negligent emotional distress.

In addition to the personal liability of Boler, the complaint alleges liability on the part of Company and the copartners. Liability is premised on two theories: (1) Company and the copartners knew or should have known of the sexual harassment, and ratified it by failing to take remedial action; and (2) the Company and the copartners had "advance knowledge" of Boler's alleged "unfitness and propensity for sexually harassing defendants' female employees," yet continued to employ Boler "in positions which gave him sufficient contact with and power over defendants' female employees to further engage in acts of sexual harassment."

The record indicates that at Boler's deposition, Boler testified to "having sex with plaintiff in his office on five occasions, but he further testified that the encounters were welcomed and indeed initiated by plaintiff." Everett's counsel then attempted to question Boler "about his sexual relations with female employees and with others outside his employ." Everett proposed a line of inquiry concerning Boler's socializing and sexual relations with Company employees, encompassing "any . . . activities of a sexual nature," including "flirtation, fondling, intimacy, [and] socializing outside of work."

Everett's counsel explained that his purpose was "to discover whether Mr. Boler may have been insensitive to signs of rejection by [plaintiff] or others in terms of sexual—obviously, from his testimony, [she] was the aggressor, but from her testimony, it's a different story. So my purpose is to delve into his sexual life and what it is that leads him to characterize his relationship with [plaintiff] as . . . nothing out of the ordinary." Boler's attorney objected to "going into any affairs under the sun," on the ground of relevancy.

Everett then brought a motion to compel responses to the line of deposition inquiry. She contended her sexual harassment claim was essentially a battle of credibility, and that Boler's sexual activities with other employees were relevant for four reasons: (1) they would "suggest . . . a propensity for using his employment position to coerce sexual favors from subordinates"; (2) once the employees were identified Everett could contact them to find out whether Boler had coerced them into sex; (3) "the pervasiveness of Boler's relations with other female employees would be probative of wheth-

er he created an intimidating, hostile and offensive work environment"; and (4) the number of Boler's past sexual encounters would be pertinent to the other defendants' knowledge of Boler's alleged propensities.

Everett also argued that "[t]he frequency of Boler's sexual activities . . . would aid the jury in assessing Boler's sensitivity to whether his advances made to an employee were or were not welcome"; and "[t]he information will also help the fact finder determine the believability of Boler's claim that in this case he was merely the passive recipient of plaintiff's sexual aggression."

Boler responded to the motion by arguing the subject matter was not relevant and that the questioning would violate his right of sexual privacy and that of the women with whom he has engaged in sexual relations. The sexual privacy claims had evidently not been raised in the deposition objection, which seems limited to relevancy. In a reply brief, Everett argued, in a single paragraph without authority, that Boler had waived the sexual privacy claim by not raising it at his deposition. Everett then addressed the claim on its merits, contending that the compelling state interest of truth in litigation overrode the privacy issues at stake. (See *Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899 [152 Cal.Rptr. 210].)

At the hearing on the motion, the superior court did not rule that the sexual privacy claim had been waived but reached the motion's merits. The court granted the motion "with respect to deposition questions to defendant Boler *relating to the extent and circumstances of his sexual relations, intimacies, flirtations and socializing, if any, with any employees, past or present,* of defendant Christensen, Boler & Company, *including the identities of said employees.*" (Italics added.) The trial court concluded the employment sexual activity was relevant to the sexual harassment charge and ruled that Boler "has no right to privacy in this matter for the purpose of this suit. . . . [¶] . . . where it is a suit of this type."

This petition followed.

Boler first argues the trial court abused its discretion by issuing the discovery order because his sexual relations with past and present employees are "not relevant to the issues before the trial court." His main argument against relevancy is that any prior acts of sexual harassment with another employee is not relevant to Everett's individualized causes of action, which involve only conduct directed toward her and which attempt to vindicate only her rights. Lurking within this argument is an unstated premise that conduct regarding other women is not admissible to prove that the current plaintiff was sexually harassed.

Everett argues, however, that notwithstanding any problems of trial admissibility, the inquiries seek information relevant to the subject matter and thus fall within the broader scope of relevancy for purposes of discovery. (See *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 172-173; see also, e.g., *Fults* v. *Superior Court, supra,* 88 Cal.App.3d at p. 902 [paternity case; interrogatories asking for names and addresses of all sexual partners for one year before and after date of conception found relevant under broad standard, but violated right of sexual privacy].) It should be noted, however, that relevancy in right of privacy cases seems to be governed by a more stringent standard of "direct relevance," apparently to prevent a searching for only tangentially pertinent sensitive information. (See *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 860-861 [143 Cal.Rptr. 695, 574 P.2d 766], & fn. 4; Weil & Brown, Cal. Practice Guide, Civil Procedure Before Trial (1987) § 8:320, p. 8C-50.)

We need not resolve the question whether Boler's prior sexual conduct is discoverable as relevant to his alleged conduct toward the plaintiff. The inquiries into the prior conduct seem clearly relevant to Everett's companion allegation that Company is liable for continuing to employ Boler knowing of an alleged propensity for sexual harassment. Evidence of prior harassment activity would be pertinent to whether such a propensity existed and, if the conduct was sufficiently visible and pervasive, to whether the other partners knew of and/or ratified it, as Everett claims.

■■ ■■ We may assume relevancy without deciding the issue. Even if the subject matter of the trial court's order is relevant, the order violates accepted principles of sexual privacy.[1]

---

[1] Everett argues that Boler waived the right of sexual privacy by objecting at the deposition only on grounds of relevancy. Her argument, like its precursor in the trial court, cites no authority and fails to address the independent sexual privacy interests of the nonparty women involved. It does seem that an objection to a deposition question must state the specific ground, and unstated grounds are waived. (See, e.g., Weil & Brown, *op. cit. supra,* § 8:719, p. 8E-72; Cal. Civil Discovery Practice (Cont.Ed.Bar. Supp. 1986) § 5.19, p. 97; see also 1 Hogan, Modern Cal. Discovery (3d ed. 1981) § 2.27, fn. 77, p. 109.)

The waiver rule does not appear to necessarily apply to the sexual privacy context for two compelling reasons. First, specific discussions and statutory language suggest waiver only in matters of evidentiary privilege and attorney work product (2DeMeo & DeMeo, Cal. Deposition and Discovery Practice (1983), § 51.70[8][a] & [8][b]; Code Civ. Proc., § 2025, subds. (m)(1), (m)(2) [eff. July 1987, but continuing earlier statutory language]); the constitutional right of sexual privacy involves neither a statutory evidentiary privilege nor work product. Second, the privacy protection extends to the unknown, unnamed female partners of Boler who have neither executed a waiver nor are even necessarily aware their privacy interests are *endangered by the* deposition question. Indeed, where third-party privacy interests are involved, the target of discovery has an affirmative duty to notify the third parties of the discovery request and give *them* an opportunity to appear and object. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]; Weil & Brown, *op. cit. supra,* § 8:318, p.8C-49.) An inflexible waiver rule would defeat the exercise of this duty and infringe upon the *constitutional privacy rights of citizens not participating in this lawsuit.*

■ The constitutional right of sexual privacy, both within and without the marital relationship, is a fundamental liberty arising from both the United States and the California Constitutions. (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029]; *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283, 289 [160 Cal.Rptr. 194]; *Fults* v. *Superior Court, supra,* 88 Cal.App.3d at pp. 903-904.) The California right has been described as a protective " 'zone of privacy' " surrounding sexual behavior (*Fults* v. *Superior Court, supra,* at p. 904); the right is grounded in the 1972 initiative by which the voters added the right of privacy to article I, section 1 of the California Constitution. (See *White* v. *Davis* (1975) 13 Cal.3d 757, 773-775 [120 Cal.Rptr. 94, 533 P.2d 222].) The right has been reaffirmed by our Supreme Court as recently as *Vinson* v. *Superior Court* (1987) 43 Cal.3d 833, 841 [239 Cal.Rptr. 292, 740 P.2d 404] ("California accords privacy the constitutional status of an 'inalienable right,' on a par with defending life and possessing property" and the "privacy protection . . . embraces sexual relations.").

■ Like other aspects of the right of privacy, such as associational privacy and the privacy of personal bank records, the right of sexual privacy may be asserted by a litigant by refusing to answer questions which "unreasonably intrude" on the right. *(Fults* v. *Superior Court, supra,* 88 Cal.App.3d at p. 903; *Britt* v. *Superior Court, supra,* 20 Cal.3d 844 [associational privacy]; *Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d 652 [bank records].) Of course, the sexual privacy right is not absolute, and disclosure may be compelled in court proceedings; disclosure is only justified, however, if the sought after disclosure would serve the compelling state interest of the facilitation of truth in legal proceedings. The party seeking court-ordered discovery must shoulder this heavy burden, and must establish more than "merely . . . a rational relationship to some colorable state interest"; " '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation' " on the right of privacy. (*Morales* v. *Superior Court, supra,* 99 Cal.App.3d at p. 290, quoting *Britt* v. *Superior Court, supra,* at p. 855.) Courts "must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery. [Citation.]" (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 842.) An intrusion upon sexual privacy may only be done on the basis of " 'practical necessity' " (*Fults* v. *Superior Court, supra,* at pp. 904-905), and "the compelled disclosure [must] be narrowly drawn to assure maxi-

---

Given the fundamentality of the sexual privacy issue and the interests of nonparties not present to object and the fact that the trial court reached the merits, we decline to rule that Boler has waived his sexual privacy objections.

mum protection of the constitutional interests at stake." (*Britt* v. *Superior Court, supra,* at p. 859.)

The *Fults* decision is a model for sexual privacy discovery, and demonstrates the discovery in the case before us is clearly overbroad and an impermissible intrusion on the rights of both Boler and his companions. In *Fults,* a paternity defendant wanted to know the names and addresses of all sexual partners of the plaintiff within one entire year before and after the estimated time of conception. The *Fults* court ruled that the one-year time span was not pertinent to the estimated period during which sexual relations were linked to conception, and the court had no difficulty in ruling the inquiry constitutionally overbroad.

In the instant case, Everett seeks the identities of *all* sexual partners who happen to be, or have been, Boler's coworkers. The order is not limited to the period of time during which Everett and Boler worked together. More importantly, the order encompasses sexual conduct with unknown third parties, which conduct may very well have been voluntary and not instances of workplace harassment. While we may not assume that all the contacts with these unknown women were necessarily consensual, we also may not assume that all the sexual contacts were coercive or otherwise part of a pattern of harassment. Everett essentially seeks a list of all the women Boler has worked with and slept with; this overbroad inquiry would disclose the intimate details of several persons' private lives without justification, and cannot be upheld.

This is especially true since Everett's request must be justified by practical necessity and its terms narrowly drawn. As for the former, there are less intrusive means by which Everett can accomplish her stated objective of being able to contact and interview other alleged victims of Boler's behavior. First, Everett's counsel apparently admitted he knew of the women already; if this is the case, he has the information from other means and cannot indulge in a sexual privacy intrusion. Second, assuming the names are not known, all Everett has to do is (1) obtain a list of all female employees of Company during the pertinent time frame and (2) contact them in person and ask them whether they had ever been sexually harassed by Boler. If any had, they will presumably say so; if any had a totally innocent sexual relationship with him, they may choose to respond in the negative and the parties' sexual privacy will be preserved.

Finally, any request for this sort of discovery must be narrowly tailored. In this case, the discovery order employs unfortunate, and in some cases anachronistic, terminology which results in an overly intrusive inquiry.

Indeed, the terminology—"flirtations," "intimacies," and "socializing"—encompasses completely innocent, nonsexual behavior, including simple conversations, casual gatherings, and harmless jocularity.

"Flirtation" is defined as "an act or instance of flirting," and "flirt" is in turn defined as "to play at courtship"; "[to] act the lover without serious intent"; and "to trifle amorously [especially] in discourse." "Flirtation" may also mean "a transitory or coquettish love affair" or "a superficial or spurious indication of liking or approval [especially] between parties normally or [usually] opposed." (Webster's New Internat. Dict. (3d ed. 1965) p. 871.) "Intimacy" is defined as "the state of being intimate: as [a] close association or connection"; a "close personal relationship [especially] marked by affection or love"; "a sexual liberty taken" not necessarily sexual intercourse; or a nonsexual but "objectionable liberty taken with the person." *(Id.,* at p. 1184.) Finally, to "socialize" means "to participate actively in a social group" or "enter into or maintain personal relationships with others." *(Id.,* at p. 2162.)

As crafted, the order is overly broad. Everett complains Boler's contention to this effect, mistakenly included under the relevancy heading, has been raised for the first time in this court. The issue, however, is a purely legal one and is part and parcel of a sexual privacy consideration. As such, it may be considered and indeed must be to protect the rights of the unknown women involved.

■ The discovery order is an impermissible intrusion into the sexual privacy of Boler and the unknown women, and must be set aside. The fact that the trial court ordered that the information obtained from Boler not be disclosed, and be filed under seal as confidential, does not cure the intrusion into the sexual privacy interests at stake. Such a protective order, while laudable, is only available *after* valid discovery has been ordered. The discovery ordered herein is not valid.

We reach this conclusion after full briefing by the parties and after notifying the parties we might proceed by issuing a peremptory writ in the first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its discovery order entered February 23, 1987, and to enter a new and different order consistent with the views expressed in this opinion.

Nothing in this opinion, of course, expresses any opinion on the merits of Everett's causes of action. The stay of proceedings previously imposed shall remain in effect until the finality of this opinion.

King, J., and Haning, J., concurred.