[No. B124163. Second Dist., Div. Four. Oct. 4, 1999.]

R.S. CREATIVE, INC., Plaintiff and Appellant, v.
CREATIVE COTTON, LTD., et al., Defendants and Respondents.

**COUNSEL**

Lanahan & Reilley, Paul Raynor Keating, John N. Zarian; Carroll, Burdick & McDonough and Donald T. Ramsey for Plaintiff and Appellant.

Grace & Sater, Gregory J. Sater; Kester & Isenberg and Charles F. Kester for Defendants and Respondents.

**OPINION**

**EPSTEIN, J.**—The trial court imposed terminating sanctions for misuse of discovery and violations of court orders after it became evident that plaintiffs had incorporated a forged contract in their complaint, had refused to

allow the completion of a principal's deposition after the forgery came to light, and had destroyed evidence. We recount the activities of the sanctioned party in detail to illustrate a kind of discovery abuse that is intolerable in civil litigation. We find no abuse of the trial court's discretion, and affirm the judgment (order of dismissal).[1]

### FACTUAL AND PROCEDURAL SUMMARY

Renee Sebastian is the chief executive officer, secretary, chief financial officer, and sole director of R.S. Creative, Inc., a California corporation (RSC). There are no other officers of RSC. RSC's offices are located in Ms. Sebastian's home. RSC is in the business of designing, manufacturing and distributing clothing. Respondents Creative Cotton, Ltd., and its principal, Paul Shafran, also are in the clothing industry.

In July 1995, RSC and Creative Cotton entered into a written contract. At one point neither side to the contract was able to find its copy. Later, Ms. Sebastian purported to have her copy, and sued on the basis of breach. The contract she attached to her complaint, and which she claimed to be the actual written agreement of the parties, was shown to be a forgery. Defendants located their copy of the actual agreement and used it to expose the fraud. RSC ultimately acknowledged that defendants' copy is authentic. Because the authenticity of documents was a key issue in the case, we refer to defendants' copy as the "genuine contract."

In February 1998, RSC and Ms. Sebastian sued Creative Cotton and Mr. Shafran for breach of written contract, declaratory relief, an accounting, and breach of an oral contract. The cause of action for breach of written contract alleged: "Creative is a manufacturer of apparel, specializing in knitwear. On or about July 26 and July 27, 1995, Shafran, individually and on behalf of Creative, entered into a three-year agreement (the 'Commission Agreement') with Sebastian, individually and on behalf of RSC. A true and correct copy of the Commission Agreement is attached hereto as Exhibit 1." Plaintiffs alleged that the defendants breached the express terms of the agreement by purporting to terminate it in December 1997 without the required notice.

The fourth cause of action, for breach of oral contract, alleged: "Beginning in or about 1993 Sebastian and Shafran agreed that Shafran would convey ten percent of the outstanding capital stock of Creative to Sebastian in consideration of her services as a sales representative for Creative (the 'Stock Agreement'). Shafran reiterated his promise to convey stock to

---

[1]Although no judgment was prepared, we treat the order of dismissal as a judgment for purposes of review on appeal.

Sebastian on numerous occasions after 1993. Sebastian materially relied upon the promises made by Shafran and continued to do work for Shafran and Creative in reliance thereon until and including 1997." The complaint alleged that Ms. Sebastian had performed her obligations under the terms of the Stock Agreement, but had not been given the promised stock.

Significantly, the first sentence of the agreement incorporated as exhibit 1 of the complaint (the purported contract) is materially different from the genuine contract. The genuine contract expressly provides that Ms. Sebastian relinquished any claim to ownership or profit share in Creative Cotton: "This will confirm our agreement on [Ms. Sebastian's] present, past and future compensation, instead of my getting a percentage ownership or profit sharing in the business." In contrast, the purported contract omits the language precluding an ownership or partnership interest for Ms. Sebastian: "This will confirm the terms of our agreement as we have discussed. You have agreed both personally and as President of Creative Cotton, Ltd. ('CCL') that Renee Sebastian/R.S. Creative, Inc. ('RSC') is entitled to and will receive the following [setting out the commission structure from the genuine agreement]." The alteration in the purported contract enabled Ms. Sebastian to allege an oral agreement giving her an ownership interest.

Defendants noticed Ms. Sebastian's deposition for April 8, 1998. She was asked to produce numerous documents at her deposition, including all documents "which . . . constitute, refer to, provide evidence of, or reflect Exhibit 1 to the COMPLAINT [the purported contract]." Ms. Sebastian was also asked to produce all documents which "provide evidence of, refer or relate to, or reflect in any manner the negotiation, preparation, creation, drafting, editing, revising, execution, performance, waiver, modification, repudiation, or breach of Exhibit 1 to the COMPLAINT." The definition of "document" in the notice of deposition included computer tapes, discs and any information stored in a computer.

Michael Echevarria, counsel for plaintiffs, telephoned Gregory J. Sater, counsel for defendants, and asked for a three-week continuance of Ms. Sebastian's deposition because she would be traveling out of town for that time. When Mr. Sater replied that his clients were unlikely to agree to the postponement, Mr. Echevarria said that Ms. Sebastian was too ill to be deposed. The parties finally stipulated that the deposition would be continued until April 29 and 30, 1998; that Ms. Sebastian would produce the documents requested by defendants unless objections were made on privilege or privacy grounds; that defendants would not be required to file a responsive pleading until the conclusion of Ms. Sebastian's deposition; and that plaintiffs would not serve or conduct any discovery until 10 days after

the conclusion of Ms. Sebastian's deposition. On April 3, 1998, the trial court entered an order in the terms of the stipulation.

Ms. Sebastian's deposition began on April 29, 1998. Plaintiffs produced another copy of the purported contract (exhibit B to Ms. Sebastian's deposition). Counsel for defendants asked to see the original of the purported contract. Plaintiffs' counsel stated that he did not have an original with him and did not know whether his client had the original. Plaintiffs did not produce any computer records at the deposition.

Ms. Sebastian testified that she and Mr. Shafran signed exhibit B at the same time and that he took the original and she kept a copy. She said that she had typed the contract on the desktop computer at the Creative Cotton showroom in Los Angeles. Ms. Sebastian later took the computer home. When asked if she had altered exhibit B, Ms. Sebastian said it was the agreement both she and Mr. Shafran had signed. She also testified that the contract attached to the complaint was a true copy of the commission agreement with Creative Cotton. Ms. Sebastian denied having altered the genuine contract to produce the copy attached to the complaint, or the copy marked as exhibit B at her deposition.

A copy of the genuine contract was marked as exhibit YY on the second day of this deposition. Ms. Sebastian identified both her signature and that of Mr. Shafran on the document. She asked to see exhibit B, the altered document, while she examined exhibit YY. She testified that she had prepared exhibit YY on her home computer. She was unable to explain how the signatures on exhibit B and exhibit YY could be in identical positions. When asked to explain the differences in the first sentence of the two versions, Ms. Sebastian said she did not know, and said that there were several documents that went back and forth.

During Ms. Sebastian's deposition on April 29, counsel for defendants sought a stipulation that she would not use her laptop or desktop computer until a computer expert for defendants had an opportunity to examine them. Absent a stipulation, counsel for defendants stated that he intended to seek an emergency order from the court the following morning to seek production of the two computers, and all disks, floppy disks, and hard drives, in order to determine the source of the two versions of the contract.

Ms. Sebastian stipulated that the computers and diskettes would not be operated or touched from April 29, 1998 until defendants' computer expert could examine them.

Ronald Kaplan, a computer expert for defendants, was available to conduct the inspection of Ms. Sebastian's computers on May 2, 3, and 4, 1998,

but was not allowed to inspect them until May 5, 1998. His examination revealed that the desktop computer had been used on Saturday, May 2 and Sunday, May 3, and that the laptop had been used on April 30, May 2, and May 4. A word processing file was deleted from the desktop computer on May 3. Although Mr. Kaplan was told that the plaintiffs had used the desktop computer between 1995 and 1997, it held no word processing file dated prior to 1998. The hard disk either had been wiped clean of all data, or a different hard disk had been installed in the desktop computer. Mr. Kaplan could not pinpoint when this occurred; he was able to determine only that the deletion was made between February 1998 and his inspection on May 5. The desktop computer revealed that a floppy disk had been loaded onto the hard drive at some point. When Mr. Kaplan asked Ms. Sebastian where her floppy disks were so that he could inspect them, Ms. Sebastian said that she did not have any and had never used them. Mr. Kaplan observed a large plastic container next to the desktop which was of the sort used to store floppy disks. It was empty. He could not determine what the person accessing the computer on May 2 and 3, 1998 had done.

Mr. Kaplan discovered that on May 2, 1998, a word processing file titled "_$corp~1.doc" was deleted from the laptop computer. Numerous other files were deleted from the laptop between April 29 and his inspection on the morning of May 5.

Mr. Kaplan was unable to find any documents or document fragments resembling the purported contract on either the desktop or laptop computer. The deleted data could not be recovered. Mr. Sater, counsel for defendants, told plaintiff's counsel, Mr. Waller, that he wanted to take possession of the computers to prevent further tampering or, alternatively, a commitment that plaintiffs' counsel would take possession of the computers. Mr. Waller did not agree to either option.

Mr. Waller had agreed that Ms. Sebastian's deposition would resume on the following day, May 6, 1998. At 9:00 a.m. on May 6, Mr. Waller called counsel for defendants and said his client was stressed by the computer inspection and would not appear for the deposition on that day, but that she would appear the next day, May 7, to resume her deposition. Mr. Waller called again on the morning of May 7 to say his client would not appear for the deposition. He agreed to May 11, 1998, as the new date for the continued deposition. But on May 8, Mr. Waller told counsel for defendants that his client would not appear on May 11, and that she would be out of town for that entire week.

Counsel for defendants continued to attempt to set a date for the resumption of Ms. Sebastian's deposition, and to reach an agreement to allow him

to gain custody of the computers from Ms. Sebastian's house. He was unsuccessful. On May 13, Mr. Waller told defendant's counsel, Mr. Sater, that his client would not agree to any date for the resumption of her deposition because she was ill. Mr. Sater replied that this was unacceptable.

On May 14, Mr. Waller faxed a letter from a psychiatrist who said that a "constellation of physical symptoms" Ms. Sebastian was experiencing would preclude her from testifying at deposition any time before May 25. The following day, counsel for each side stipulated to extend the time defendants had to file a response to the complaint, and to place Ms. Sebastian's desktop computer in third party storage which could only be accessed by counsel for both sides appearing together. The trial court signed a stipulated order requiring Ms. Sebastian to appear for deposition on May 26, 1998, and thereafter until it was completed.

Mr. Sater went to Palm Springs over the Memorial Day weekend and prepared for Ms. Sebastian's deposition. When he arrived at work on Tuesday, May 26, the videographer and court reporter were present and prepared to record Ms. Sebastian's deposition. Mr. Sater found a fax which had been received by his office at 3:45 p.m. the preceding Friday while he was in Palm Springs and the other attorney for defendants, Mr. Friedman, was out of town. The fax, from attorney Bruce A. Nahin, enclosed an executed substitution of attorney form naming him as new counsel. Also enclosed was a first amended complaint, which deleted Ms. Sebastian as an individual plaintiff. Neither the substitution of attorney nor the amended complaint was conformed.

The first amended complaint incorporated the genuine contract rather than the purported contract, which had been incorporated in the original complaint. It also omitted the cause of action for breach of an oral contract that had claimed an ownership share in Creative Cotton, and added a cause of action for infringement of trade secrets, confidential and proprietary information. The fax expressed a "desire to coordinate" deposition dates for Ms. Sebastian and for Mr. Shafran. It did not say that Ms. Sebastian would not appear for the continuance of her deposition.

When she did not appear by 10:22 a.m. on May 26 to complete her deposition, Mr. Sater telephoned Mr. Nahin. Mr. Nahin stated that since Ms. Sebastian was no longer a party to the complaint she would not appear for her continued deposition. Mr. Nahin sent a letter to Mr. Sater stating in part: "Enclosed please find the First Amended Complaint which will be filed today and you will note Ms. Sebastian is no longer a party. Her medical condition therefore is not at issue nor was the exhibit attached to the original

complaint. My client also has no need to have the computer in storage and is prepared to release same to your client." Mr. Nahin offered to meet and confer with Mr. Sater to bring the discovery process "into a less warlike atmosphere."

Mr. Sater objected to the position taken by Mr. Nahin and sent him a letter to that effect. Mr. Nahin responded by offering to "make my self [*sic*] available for deposition during the next few weeks for the party most knowledgeable at R.S. Creative. Like wise [*sic*] I would ask you to provide me with dates within 30 days to take the deposition for the party most knowledgeable at Creative Cotton. [¶] The Stipulation and Court Order that I reviewed for the first time late Monday afternoon seemed to imply that plaintiff Renee Sebastian made certain agreements. The deposition noticed was for plaintiff Renee Sebastian. It had been my assumption that once Renee was no longer a plaintiff that this Stipulation and Order would no longer be in affect [*sic*]. Indeed nowhere in the file is there a Notice of Deposition of a party most knowledgeable at R.S. Creative."

Mr. Nahin acknowledged that the genuine contract provided by defendants was the true and correct copy of the agreement between the parties. He said that the genuine contract was now the attachment to the first amended complaint. An exchange of correspondence between counsel for the parties followed, discussing the outstanding issues between them.

On June 15, 1998, defendants filed a motion for terminating sanctions or, in the alternative, for lesser sanctions, based on the facts we have summarized. Plaintiff RSC filed a declaration of Mr. Nahin in opposition to the motion. In it, Mr. Nahin declared that counsel for defendants had not agreed to his efforts to establish an "orderly deposition schedule" for the case. He reiterated his position that Ms. Sebastian was not obligated to complete her deposition because she was no longer a plaintiff; that he did not represent her; and that the proper course was for defendants to notice a new deposition of the party most knowledgeable about RSC.

Mr. Sater responded with a supplemental declaration in support of defendants' motion for terminating sanctions. In it he stated that Mr. Nahin had taken the position that a new deposition of the person most knowledgeable of RSC would have to be noticed and that Mr. Nahin had not offered to complete the deposition of Ms. Sebastian. He also pointed out that the first copy of the substitution of attorney form from Mr. Nahin stated that he was coming into the litigation as counsel for Renee Sebastian. A second copy of the substitution of attorney sent to Mr. Sater by Mr. Nahin also states that Mr. Nahin is attorney for Renee Sebastian. On each document, this was

shown at the upper left-hand corner where counsel is identified. The text of the substitution of attorney states that RSC was substituting Mr. Nahin and his firm as counsel.

At oral argument on the motion for terminating sanctions, Mr. Nahin repeated his position that Ms. Sebastian was not required to complete her deposition because she was omitted as a party from the first amended complaint. The trial court asked Mr. Nahin to state Ms. Sebastian's position in RSC. Mr. Nahin said: "I read the domestic stock filing certificate that counsel presented and . . . she's the officers [¶] . . . and I have no reason to tell the court otherwise." The court responded: "Her activities should clearly be attributable to or attributed to the corporation then." Mr. Nahin again repeated that the personal deposition of Ms. Sebastian was not the same as a deposition noticed for the person most knowledgeable about RSC. The trial court said: "But she is the corporation, from what I understand here. It's not as though she was a minor stockholder and somehow what she did would unduly prejudice a party. She is the party in the whole process."

Mr. Nahin argued that alternative sanctions would be more appropriate. He said: "We're not disputing the issue of that first contract and the like." The trial court expressly stated that it had considered all alternatives to terminating sanctions and "they were presented to me in great detail by the moving party. And as far as the options I have here, I think the appropriate sanction is that of terminating the action because of the conduct of the witness and the plaintiff in this matter. She is not just a witness, she is the plaintiff and the principle [sic] on behalf of the plaintiff." The trial court announced that it would grant the motion to terminate, and awarded sanctions of $5,000 against plaintiff RSC, and the formal order imposed those sanctions.

A notice of appeal on behalf of RSC was filed which stated that "defendant Renee Sebastian and R.S. Creative Incorporated" appeal from the order granting terminating sanctions. The appeal by Renee Sebastian was later abandoned.

While the case was on appeal, RSC moved to vacate the dismissal in the trial court. It submitted declarations in support of that effort, but eventually withdrew the motion in May 1999. In April 1999, we denied RSC's "Motion for Factual Determinations and Request to Take Evidence on Appeal" without prejudice to raising such issues that are supported by the record on appeal.

## DISCUSSION

This is the first reported California case to consider terminating sanctions for spoliation of evidence after the Supreme Court's decision in *Cedars-Sinai*

*Medical Center* v. *Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511]. In that case, our high court ruled that there is no tort cause of action for spoliation of evidence against a party to the litigation. The court emphasized the availability of other remedies for spoliation, including terminating sanctions under Code of Civil Procedure section 2023.[2] The court recognized the strong public policy "favoring use of nontort remedies rather than derivative tort causes of action to punish and correct litigation misconduct." (18 Cal.4th at p. 11.)

The court observed: "Destroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of section 2023, as would such destruction in anticipation of a discovery request." (18 Cal.4th at p. 12.) The Supreme Court examined the broad range of sanctions provided in section 2023 for a misuse of the discovery process: "The sanctions under Code of Civil Procedure section 2023 are potent. They include monetary sanctions, contempt sanctions, issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the offending party from introducing designated matters into evidence, and terminating sanctions that include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment against the offending party." (18 Cal.4th at p. 12.)

The *Cedars-Sinai* court also examined other deterrents to spoliation of evidence by a litigant, including the evidentiary inference that evidence made unavailable was unfavorable to the party responsible (Evid. Code, § 413); disciplinary sanctions by the State Bar of California against the lawyers involved (Bus. & Prof. Code, §§ 6106, 6077; Rules Prof. Conduct, rule 5-220); and prosecution for the misdemeanor of willful destruction or concealment of evidence under Penal Code section 135.[3]

■ Section 2023 provides that dismissal may be used as a sanction when there has been a misuse of the discovery process. The statute states in pertinent part that "(a) Misuses of the discovery process include, but are not limited to, the following: [¶] . . . [¶] (4) Failing to respond or to submit to an authorized method of discovery. [¶] (5) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (6) Making an

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]Penal Code section 135 states: "Every person who, knowing·that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor."

evasive response to discovery. [¶] (7) Disobeying a court order to provide discovery."

RSC would have us conclude that the dismissal of its complaint arose from "misunderstandings" and that it was based "on a corporate officer's failure to attend the third day of her individually noticed deposition." It argues: "At the hearing dismissing appellant's case, sideshows—regarding turnover of a computer hard drive, an incorrectly attached contract to the initial complaint and confusion about attendance at a deposition—became center stage in a lawsuit that merely asked for unpaid commissions on a contract that had been in force and honored by defendants for the previous three years." In light of the history we have summarized, this characterization is a gross understatement of the record.

■ " ' "The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be wilful . . . ." ' " (*Vallbona* v. *Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311].)

■ The record amply supports the trial court's exercise of its discretion in dismissing the complaint as a sanction for the repeated efforts of the plaintiffs to thwart discovery, including the violation of two discovery orders. Renee Sebastian was the only principal of RSC. At all times relevant to this appeal she acted on its behalf as well as her own. Under these circumstances, we find no merit in the argument made in the trial court that defendants were not entitled to complete the deposition of Ms. Sebastian which it had begun. We reject the argument that Ms. Sebastian could further delay the deposition by the expediency of filing a new complaint removing herself as an individual party plaintiff. It is plain that she acted for RSC; indeed, the evidence indicates that she and RSC were one and the same. For the same reason, there is no merit in RSC's related argument that the dismissal was improper because it was based on conduct of Ms. Sebastian rather than RSC.

We recognize that terminating sanctions are to be used sparingly, only when the trial court concludes that lesser sanctions would not bring about the compliance of the offending party. The record demonstrates repeated violations of stipulations and court orders, a forged document offered as true, and deliberate destruction of evidence pertinent to exposing that fact.

RSC acknowledges that the termination sanction was based, at least in part, on forgery of the contract and the alleged destruction of evidence. It

argues that these are improper bases for the sanctions. But, once again, RSC presents an overly simplified account of the record. Spoliation is the intentional destruction or suppression of evidence (*Cedars-Sinai Medical Center v. Superior Court, supra,* 18 Cal.4th at p. 4.) A traditional remedy for spoliation of evidence is discovery sanctions under section 2023. (18 Cal.4th at p. 12.) The trial court did not abuse its discretion by basing its order, in part, on the alteration of the contract and the use of the computers contrary to the stipulation of the parties.

RSC also argues that it was prevented from obtaining a fair hearing on the motion for terminating sanctions because its attorney, Mr. Nahin, had a conflict of interest in that sanctions (in the amount of $40,200) were sought against both him and his clients.[4] (Defendants sought $13,275 as monetary sanctions for Ms. Sebastian's failure to appear at her deposition. They also sought an additional $25,280 in fees and costs related to the efforts to obtain computer records.) RSC may, of course, seek its remedy against Mr. Nahin. (See *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775].) But a rule preventing a remedy against a party and the party's attorney based on this sort of "conflict" would eviscerate the statute, which expressly authorizes such relief. We decline to adopt such a rule. We also observe that RSC failed to present this argument to the trial court, in a motion for relief under section 473 or otherwise. It is not entitled to raise it for the first time on appeal.

RSC also argues that the dismissal of its case violated due process because terminating sanctions should only be used as a last resort and because there was no showing that Renee Sebastian would not complete her deposition. We do not understand how RSC can make the second argument in light of its adamant position that Ms. Sebastian would not appear to complete her deposition, and that a new notice for the person most knowledgeable about RSC would have to be served.

On the record we have summarized, we find no due process violation. RSC and Ms. Sebastian had ample opportunities to comply with discovery orders, but failed to do so. Section 2023 authorizes terminating sanctions in the first instance in egregious cases such as this one. Neither RSC nor Ms. Sebastian attempted to take any affirmative steps to support their position. There is no indication in the record that they sought a protective order to stop the continued deposition of Ms. Sebastian, or that its position regarding the need for a new notice after the filing of the amended complaint was presented to the trial court until the motion for terminating sanctions was filed.

---

[4]Neither Mr. Nahin nor any of plaintiffs' other trial counsel represents RSC on appeal.

RSC argues that there was no evidence before the trial court that the missing computer files were destroyed in violation of the stipulation, or could not be retrieved. The trial court implicitly rejected that argument. Properly so. The parties had stipulated that Ms. Sebastian's computers would not be turned on or operated between April 29th and the time the expert for defendants could examine them. Contrary to the stipulation, they were operated during that time period, some files were entirely deleted during this period, and it is reasonably inferable that others were as well.

RSC argues: "Of course, requesting a complete hard drive from someone's home computer is, on its face overly broad. It is reasonable to assume that individuals keep highly personal materials in their computer hard drive (diaries, financial information and other items subject to privacy protections). Asking for the complete hard drive at deposition suggests that the request was nothing more than a fishing expedition meant to burden and intimidate—purposes clearly beyond the scope of allowable discovery. The privacy protections in question here are not waived, even if they were not asserted earlier. See Boler v. Superior Court (1987) 201 Cal.App.3d 467, 472 [247 Cal.Rptr. 185].)"

There are three responses to this argument. First, *Boler* v. *Superior Court* (1987) 201 Cal.App.3d 467 [247 Cal.Rptr. 185] is distinguishable. The privacy issue, while not raised in the deposition, was argued thoroughly before the trial court on a motion to compel responses to deposition questions. (*Id.* at pp. 470-471.) The Court of Appeal specifically limited its comments on waiver to questions of sexual privacy and focused on the concern that the privacy interests of third parties were at issue. (*Id.* at p. 472, fn. 1.) Second, having failed to seek a protective order to raise these issues, RSC is precluded from raising them now. Finally, this was no fishing expedition. At deposition, Ms. Sebastian testified that she prepared both the genuine contract and the purported contract on computers which she now had at home. Defendants were entitled to the discovery they sought with respect to the computers.

This case presents a particularly egregious example of an effort at discovery games by plaintiffs. Indeed, the efforts of RSC's principal and only officer and director went beyond gamesmanship and intruded into the area of actual fraud. The terminating and monetary sanctions imposed by the court are fully justified.

## DISPOSITION

The order dismissing appellant's complaint is affirmed. Defendants are to have their costs on appeal.

Vogel (C. S.), P. J., and Hastings, J., concurred.