Filed 7/23/14  Halpern v. Skukla CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEVIN HALPERN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ANU SHUKLA,<br><br>        Defendant and Respondent. | A138722<br><br>(Alameda County<br>Super. Ct. No. RG09466814) |

Plaintiff Kevin Halpern appeals a judgment[1] dismissing with prejudice his complaint against defendant Anu Shukla following the entry of terminating sanctions for disregard of discovery orders. Given Halpern's repeated disregard of the court's orders, we find no abuse of discretion and shall affirm the judgment.

**Factual and Procedural Background**

In 2009, Halpern filed a complaint against Shukla alleging causes of action for breach of fiduciary duty, intentional misrepresentation, and fraud. The complaint alleges that Halpern and Shukla had an oral agreement as of May 2006 to work together to develop an internet product, to establish a viable company to market the product and ultimately to take the company public. In September 2006 Shukla allegedly repudiated the agreement and told Halpern that he would not be a founder of the corporation that

---

[1] Although no judgment was prepared, we treat the order of dismissal as a judgment for purposes of review on appeal. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 488, fn. 1.)

1

Shukla formed and would not receive between 15 and 20 percent of the equity of the corporation as allegedly promised.

In a prior appeal (*Halpern v. Shukla* (June 28, 2011, A128583) [nonpub. opn.]), this court reversed a judgment entered in favor of Shukla following the sustaining of a demurrer without leave to amend. Following remand, the parties commenced discovery. Numerous disputes regarding the production of documents, responses to special interrogatories and Halpern's deposition, culminated in the dismissal of Halpern's action.

Document Production

On July 12, 2012, Shukla served her third set of requests for production (RFP) of documents (RFP Nos. 43-87). On August 13, Shukla served Halpern with a fourth set of requests (RFP No. 88), seeking all communications between Halpern and Kim Huynh, who according to Halpern was making a film about this case, and all communications between either of them and any third party relating to the film. Halpern, who at that point was representing himself in the litigation, acknowledged having received both requests but did not serve written responses or request an extension by the statutory deadline.

On September 4, Halpern retained the third attorney to represent him in the case, Daniel Mash. Mash immediately requested Shukla's counsel to send him any outstanding discovery requests, stating that he was aware of the fourth set of requests (RFP No. 88) but not the third set (RFP Nos. 43-87). Shukla's counsel immediately forwarded to Mash the requests.

On September 28, Halpern served verified responses and objections to the document requests. The response to every request indicated that Halpern would produce all non-privileged responsive documents in his possession, custody or control. Four days later, Halpern filed a substitution of counsel indicating that he would, once again, be proceeding in propria persona.

On October 3, Halpern sent an email to Shukla stating that he needed an extension of "3-6 business days" to produce documents. Shukla agreed but reserved the right to seek fees on a motion to compel if one became necessary. On October 7, Halpern sent an email to Shukla stating that he would be producing documents responsive to Shukla's

2

third set of requests but that he did not intend to produce documents responsive to Shukla's fourth set of requests regarding the film.

On October 9 and 10, Halpern produced various emails, one of which was a document in which a series of emails were cut and pasted. None of the attachments to the original emails was included. When asked to clarify whether this was the entirety of his production or whether he intended to produce more documents, Halpern responded that other documents "may exist" but it would "take hundreds of hours to compile" them and that he would "produce more documents as soon as possible." When no additional documents were produced, on October 17 Shukla filed a motion to compel documents responsive to her third and fourth sets of requests.

On October 22, in advance of the hearing on the motion to compel, Halpern retained Justin Schwartz to represent him in this litigation. On November 13, the court granted the motion to compel further production of documents. The court's order provides in relevant part, "Plaintiff failed to comply with the requirements of [Code of Civil Procedure section] 2031.280[2] when he made his partial production. Plaintiff is hereby advised that if he produces email correspondence to defendant, he must produce the email message as they appear in his email folders. Plaintiff is not entitled to cut and paste messages into a newly created . . . document. Plaintiff must also provide defendant with copies of all documents and images attached to the email message." The court granted Shukla's request for monetary sanctions and gave Halpern until November 29 to comply with the order. Finally, the court warned Halpern that the court is "authorized to impose more serious discovery sanctions if he fails to comply with this order."In late November, Halpern made a supplemental production, which Shukla maintained failed to comply with the court's order.

Special Interrogatories

On October 25, 2012, Shukla served on Halpern a second set of special interrogatories containing numbers 8 through 33. The day before the interrogatories were

---

[2] All further statutory references are to the Code of Civil Procedure.

due, Halpern's then-counsel, Justin Schwartz, requested an extension and was granted additional time to respond. On November 30, Halpern served a response that consisted of nothing more than identical boilerplate objections (privilege, relevance and burden) to each interrogatory. In December 2012, another substitution of counsel was filed, indicating that Halpern would again be appearing in propria persona. The following month, Halpern retained attorney Samuel Goldstein to represent him through summary judgment proceedings. On January 11, 2013, Goldstein filed a limited appearance on Halpern's behalf. On February 5, Halpern served a supplemental response to Shukla's special interrogatories which Shukla maintained failed to comply with the court's order.

Halpern's Deposition

On October 25, 2012, Shukla noticed Halpern's deposition for December 17, 2012, at her attorney's office in San Francisco. Shukla advised Halpern's then-counsel, Justin Schwartz , that she was providing Halpern ample advance notice to ensure his attendance, because of the upcoming deadline for filing a summary judgment motion. Halpern did not object to the notice. Five days before the noticed deposition, Schwartz announced that he intended to withdraw and requested that Halpern's deposition be postponed into the following year. Concerned about the timing of a summary judgment motion, Shukla requested that Halpern agree in writing to appear for his deposition on January 14, 2013. Schwartz, copying Halpern, responded, "Prior to my filing a substitution of attorney on this case, I wish to inform you that Mr. Halpern has agreed to attend his deposition on January 14, 2013. I assume that this will be at your office. Can you please confirm that date location and time? Until I file the Substitution, I am still acting as plaintiff's attorney and I am empowered to accept a notice of continued deposition for that date so kindly serve that upon me electronically (I will accept service by that method) and I will forward that to Mr. Halpern. [¶] This will also acknowledge our prior discussion in which we both felt it was best to take the December 17, 2012 [deposition] off calendar. Thus, Mr. Halpern will not be attending the deposition on December 17th as we have agreed to continue it until January 14, 2013. If this differs in any way from your understanding of our conversation, please contact me immediately."

4

That same day, Shukla served Halpern with a notice of continued deposition in accordance with the parties' agreement, setting the deposition for January 14, 2013, in the San Francisco offices of Shukla's attorney.

On January 11, 2013, Goldstein, who was now representing Halpern, requested that the deposition be continued to accommodate his schedule. On January 14, the parties agreed to continue Halpern's deposition to January 28 (and to extend the deadline for serving a summary judgment motion to February 11). The parties filed a stipulation with the court and on January 22 the court signed an order approving the stipulation and ordering the deposition to be taken on January 28.

On January 15, 2013, Goldstein requested that the deposition be moved to a location in the East Bay of Shukla's choosing, so that he and Halpern "do not have to travel to SF during 'rush hour.' " Shukla's counsel refused to agree to move the location of the deposition.

On January 16, 2013, Shukla took the deposition of Halpern's filmmaker friend, Kim Huynh. Goldstein represented Huynh during that deposition which lasted approximately four-and-a-half hours including a lunch and other breaks. Halpern sat in attendance for the entire deposition except for the last six minutes.

On January 23, 2013, Goldstein emailed Shukla's attorney a notice of objection to Halpern's deposition. Halpern objected to the location of the deposition as unauthorized by section 2025.250 because the location was not within 75 miles of Halpern's residence in New York City. The notice stated, however, that Halpern would "waive this objection and appear for deposition in the East Bay at a location of Ms. Shukla's or her counsel's choosing." Lastly, it stated, "Mr. Halpern attended the deposition of Kim Huynh at Ms. Shukla's counsel's office in San Francisco and noted that the law office is under construction, is very dusty, the chairs provided to Mr. Halpern were too uncomfortable for him to endure the full length of the deposition, and the alternate chair provided by counsel (straight back and wooden) was also uncomfortable. Further, Mr. Halpern's medical condition precludes his utilizing the seating accommodations of counsel's San Francisco office." Upon receipt of this notice, Shukla's attorney responded in writing that

5

if Halpern did not appear for his deposition as noticed, Shukla would move the trial court for terminating sanctions. Halpern was also advised that he was free to bring his own chair. On January 28, Halpern failed to attend the noticed deposition.

Shukla's Motion to Compel

On February 1, 2013, Shukla filed a motion to compel and for sanctions. The motion sought an order precluding Halpern from proffering his own testimony in opposition to her forthcoming summary judgment motion, or in the alternative, an order compelling Halpern to appear for deposition, provide responses to Shukla's special interrogatories, and produce documents as previously required by the court. At the same time, Shukla filed an ex parte application to have the motion heard on shortened time.

Halpern opposed the ex parte application and the motion to compel. He argued that contrary to Shukla's assertion, "no agreement as to the location of the deposition of Mr. Halpern was made and no court order (as is required by California law) was entered fixing the location of the deposition." He asserted that there had been no compliance with section 2025.250 subdivision (a), which requires the court to make findings before ordering the deposition take place at a location more than 75 miles from the deponent's residence. Halpern also submitted the declaration of Dr. Andrew Mulberg to the effect that Halpern had an illness that prevented him from sitting in an ordinary chair for longer than a few minutes without suffering great discomfort.

At the February 7 hearing on Shukla's ex parte application, the court questioned whether there was a way to get Halpern to "fully and completely respond to discovery and to maintain the [May 13] trial date." The court stated, "What the court is faced with is a situation in which the plaintiff, who has invoked the jurisdiction of this court with respect to a dispute he has with the defendant, has, without good reason, failed and refused to respond to appropriate discovery, and he has done so on more than one occasion. [¶] He has been sanctioned, I believe the amount was $900, once. And it is now the court's task to decide whether to simply put an end to this abuse of the court's process or to twist itself and the defendant out of shape, continue the trial date that's been set, and was set with the plaintiff's input, to the next available date, or — so those are my choices.

6

[¶] Obviously, if I do the latter, there will be another substantial sanctions award that I will leave it to defendant to propose. But I have — as I said, Mr. Goldstein, I have read your papers. I am not persuaded by them. [¶] Your client has, to be candid, been clowning around with this case for years. He claims to have hired film crews to do a documentary of depositions in the case. And now he comes to court saying that he can't sit in the chair in a deposition room, or that he suddenly has a problem with dust. It beggars the imagination, and it does not convince this court that he is acting in good faith. [¶] So tell me why I shouldn't just put an end to it, which is really what I have in mind to do." After rejecting Halpern's argument regarding the location of the deposition and finding his excuses about dust and uncomfortable chairs to lack credibility and to be in bad faith, the court ordered Halpern to attend his deposition at the office of Shukla's attorney in San Francisco on February 14, 2013. The court warned that "any failure by Mr. Halpern to appear . . . in your offices for a deposition, without excuses, . . . will be the end of the case." The court also advised Halpern that his failure to provide appropriate responses to the special interrogatories and other outstanding discovery requests could result in dismissal on his action.

On February 8, Shukla's attorney circulated a proposed order along with a note that read, "Please note that due to our schedules, we included a deposition date of February 18 (not February 14). If you or Judge True believe that the date should be February 14, we will take the deposition on that day." On the same day, the court signed the order setting the deposition in San Francisco on February 18. The court also imposed monetary sanctions of $1,200 against Halpern pursuant to section 2023.030, subdivision (a).

On February 13, Halpern sent an email to Shukla's counsel objecting to the order signed by the court on numerous grounds, including the following: "The deposition date is not acceptable: [¶] i. The Judge said nothing about February 18, 2013. [¶] ii. February 18, 2013 is a National Holiday. [¶] iii. Mr. Halpern is unavailable for deposition until he returns to the Bay Area. This will be in the second half of March. Given the fact that the trial has been vacated there is no reason now for the February 18th date. [¶] iv. Although

7

the Judge failed to mention . . . section 2025.250 or 2025.260 at the hearing, we continue to believe that the California Legislature did not intent that a California Judge could so easily change the place of the deposition that the Legislature mandated. I do not believe it is appropriate for a judge to use a discovery sanction as a sword to cut through the clear statement of the Legislature . . . . [¶] Although a relatively small issue, it is clear from the hearing of February 7, 2013 that Judge True did not believe that Mr. Halpern has any medical problem. You contended that since Dr. Mulberg is Mr. Halpern's uncle his declaration was not to be believed. . . . [Y]our callous disregard for Mr. Halpern's life long illness is truly unfortunate. Mr. Halpern cannot attend the deposition on February 18, 2013 for a variety of reasons. Among them is that he is working in another state." Halpern offered to waive the 75-mile limit and appear for deposition on two days in March at a location in the East Bay. In response, Shukla's attorney renoticed the deposition for February 19. Halpern did not attend his deposition on either February 18 or 19.

Shukla's motion to compel and for sanctions was heard on March 5. At the hearing, Halpern claimed that he had complied to the best of his ability with the document production request. His attorney explained, "[T]here are only four pages of documents that are asserted by moving party as not having been produced . . . and those documents are emails. And those emails are from a server . . . that crashed. And those documents don't exist as far as Mr. Halpern's concerned. [¶] . . . [W]hat [Shukla's attorneys] did is they smeared Mr. Halpern. They attacked [him], and they said 'Look, we have these documents. Mr. Halpern must have the documents, and he deliberately didn't produce them or he deliberately destroyed them.' " With respect to the special interrogatories, counsel argued that the supplemental responses served on February 5 were adequate and that Shukla's attorney failed to meet and confer regarding any deficiencies before filing the motion to compel. Finally, with regard to the deposition, Halpern's attorney argued that "Halpern was ready, willing and able to attend the deposition on [January] 28th" but that after attending the deposition in San Francisco on January 16 and seeing the conference room and chairs, he "asked that it be in a neutral

8

location in the East Bay." When asked why Halpern disregarded the court's order to appear and have his deposition taken on February 18, counsel explained essentially, that Halpern was not required to comply with the order because the location of the deposition was not within 75 miles of his residence in New York. After hearing Halpern's arguments, the court indicated that Halpern's excuses lacked credibility and his arguments were not persuasive. The court concluded that "sanctions, more than just the heretofore ineffectual monetary sanctions are appropriate" and indicated that the court was "not inclined on this record to give [Halpern] another chance, based on his declaration that, in spite of his various claims about the locations of the deposition and the type of chair and the dust, that he will show up sometime at the end of March." The court requested Shukla's attorney to prepare a proposed order with a suggested remedy and the court would determine how to proceed.

On March 15, the parties entered into a stipulation asking the court to accept briefing on the question of whether the court should impose terminating sanctions on the record before it, and waiving oral argument. Following the submission of briefs per the stipulation, the court issued an order finding that "there has been a continuing and escalating disregard for discovery rules and the court's orders" by Halpern and that " [u]nder these circumstances, terminating sanctions are appropriate." The court identified the following circumstances in support of its order: "[(1)] Halpern did not obey the court's November order, or at the very least, did not disclose why he could not obey it. It is problematic that the emails that Shukla considers critical, are the emails that were allegedly stored on the crashed server. As described below, it does not appear that the court's order that Halpern pay monetary sanctions dissuaded him from ignoring his obligations or the court's orders. [¶] [(2)] Halpern did not show up for his deposition in late January, notwithstanding his prior counsel's correspondence or the court's subsequent entry of the parties' stipulated proposed order requiring him to do so. [¶] [(3)] After the court ordered him to appear for his deposition on February 18, Halpern refused to appear on February 18, 19 or any other date prior to the second half of March 2013. He also refused to pay the sanctions that the court ordered him to pay. [¶] [(4)]

9

Notwithstanding that Shukla explained the defects in his interrogatory responses in court and on the record, Halpern refused to remedy the defects in those responses, instead arguing that it was Shukla's obligation to meet and confer. The court finds that the amended interrogatory responses are . . . deficient because every response except for one purports to invoke section 2030.230. However, that section requires the responding party to describe the record from which the compilation or summary can be made with sufficient particularity that they can be easily located. . . . Halpern fails to offer such a description."

The order dismisses Halpern's complaint with prejudice. Thereafter, Shukla dismissed her cross-complaint with prejudice. Halpern filed a timely notice of appeal.

**Discussion**

Section 2023.030, subdivision (d)(1) authorizes the court to impose a terminating sanction against a party who engages in conduct that constitutes a misuse of the discovery process. Under section 2023.010, subdivision (g), it is a misuse of the discovery process to disobey a court order to provide discovery. (See § 2025.450, subd. (h) [Terminating sanction under chapter 7 (commencing with section 2023.010) may be imposed against a party who fails to obey a court order compelling attendance, testimony, and production at a deposition.].)

"In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason." (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988.) " 'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be wilful.' " (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36.) "[T]he issue before us is not what sanction we would have imposed, but whether the trial court abused its discretion in ordering dismissal as a sanction." (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231

10

Cal.App.3d 481, 491, disapproved on other point by *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn.4.)

Halpern argues the court abused its discretion by dismissing his action. He argues that the trial court may not sanction him for exercising his right to refuse to be deposed in California; that he produced all documents responsive to Shukla's requests that were in his possession; that he answered the special interrogatories to the best of his ability and that his failure to pay monetary sanctions was justifiable because the court should not have imposed the monetary sanctions in the first place. We need not consider each of the grounds cited by the court and Halpern's arguments addressed thereto, because it is clear that the court acted within its discretion in dismissing the action based solely on Halpern's failure to appear for his deposition despite repeatedly being ordered by the court to do so.

Halpern's reliance on sections 2025.250 and 2025.260 is misplaced.[3] Whether or not these provisions would have precluded sanctions had they been properly invoked when Halpern's deposition was first noticed in December 2012, Halpern failed to object on that or any other ground in a timely manner. To the contrary, he expressly agreed to have his deposition taken in San Francisco as part of the agreement to continue the

---

[3] Section 2025.250, subdivision (a) provides: "Unless the court orders otherwise under Section 2025.260, the deposition of a natural person, whether or not a party to the action, shall be taken at a place that is, at the option of the party giving notice of the deposition, either within 75 miles of the deponent's residence, or within the county where the action is pending and within 150 miles of the deponent's residence." Under section 2025.260, subdivision (b), the court must consider the following factors in deciding whether to grant or deny a motion by a party desiring to take the deposition of a party at a place that is more distant than that permitted under Section 2025.250:"(1) Whether the moving party selected the forum. [¶] (2) Whether the deponent will be present to testify at the trial of the action. [¶] (3) The convenience of the deponent. [¶] (4) The feasibility of conducting the deposition by written questions under Chapter 11 (commencing with Section 2028.010), or of using a discovery method other than a deposition. [¶] (5) The number of depositions sought to be taken at a place more distant than that permitted under Section 2025.250. [¶] (6) The expense to the parties of requiring the deposition to be taken within the distance permitted under Section 2025.250. [¶] (7) The whereabouts of the deponent at the time for which the deposition is scheduled."

deposition to January 14, 2013. Again without objecting to the location of the deposition, Halpern sought a further continuance and, based on a stipulation, obtained a January 22 court order setting the deposition on January 28. It was only after the stipulated order was entered that Halpern first made any mention of section 2025.250. Halpern's objection, made on January 23, was not a timely assertion of his right to challenge the location of his deposition under section 2025.250. Had Halpern timely asserted an objection, it is likely that Shulka could have obtained an order authorizing the deposition in San Francisco, since a significant consideration under section 2025.260 is "the whereabouts of the deponent at the time for which the deposition is scheduled" and Halpern was then present in the Bay Area.

It is irrelevant whether the original notice setting the deposition in December 2012 at a location in San Francisco was "void on its face" so that "no objection [was] required," as Halpern now contends. Halpern did not merely fail to object. He twice expressly agreed to appear in San Francisco in connection with agreements to reschedule the deposition, once obtaining a court order based on his agreement.

.At the February 7 hearing, Halpern cited section 2025.250 and argued extensively that the court could not order him to appear for his deposition in San Francisco. The court correctly rejected this argument and ordered him to appear on February 18 in San Francisco. Despite being advised of the potentially dire consequences of failure to appear, Halpern again chose to ignore the court's order. Given what the court reasonably characterized as Halpern's "clowning around" with this case, the court did not abuse its discretion in concluding that this continued disregard for the court's orders warranted terminating sanctions.

**Disposition**

The judgment is affirmed. Shukla shall recover her costs on appeal.

 

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.