[No. A112934. First Dist., Div. Three. May 26, 2006.]

VOLKSWAGEN OF AMERICA, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN FRANCISCO COUNTY, Respondent;
BUDDY RUSK, SR., Real Party in Interest.

1482

COUNSEL

Carroll, Burdick & McDonough, James G. Scadden; Gordon & Rees and Don Willenburg for Petitioner.

No appearance for Respondent.

Brayton-Purcell, Allan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy and Nancy B. Thorington for Real Party in Interest.

OPINION

**POLLAK, J.**—Are documents submitted to bankruptcy trusts by a plaintiff's attorney in support of claims for compensation for alleged asbestos-related injuries discoverable in similar litigation against another entity? We conclude that most such documents normally are, and shall issue a writ of mandate to correct an overly restrictive discovery order entered in the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2003, real party in interest Buddy Rusk, Sr., filed suit against 67 named defendants, including petitioner Volkswagen of America,

Inc. (Volkswagen), for injuries he allegedly suffered as a result of asbestos exposure. In April 2005 Volkswagen requested the production of "all documents[1] [Rusk] submitted to a bankruptcy trust administering assets of" any of 72 designated companies. Rusk objected on multiple grounds including that the requests invaded protected privacy interests. He produced no responsive documents. Volkswagen learned, however, that Rusk's attorneys had submitted documents in the chapter 11 bankruptcy proceedings of Kaiser Aluminum & Chemical Company (Kaiser) and to a bankruptcy trust established to handle asbestos claims against Johns-Manville Corporation. Rusk subsequently acknowledged that he had filed a claim with a bankruptcy trust established to handle asbestos claims against Western MacArthur Co., but refused to produce any of those documents.

Petitioner brought a motion to compel the production of the Kaiser, Johns-Manville Corporation and Western MacArthur Co. documents, "and to produce any and all documents related to plaintiff's submissions to bankruptcy trusts for his alleged asbestos-related disease." Reasoning in part that the standard for discovery is affected by the ultimate admissibility of the information requested, the court ordered the disclosure of amounts Rusk had received in settlement from any of the trusts and the production of declarations submitted to the trusts signed by Rusk, but not of any documents signed by Rusk's attorneys. The trial court order, dated December 9, 2005, states in pertinent part: "1. Documents submitted by or on behalf of plaintiff Buddy Rusk, Sr. to asbestos bankruptcy trusts are not privileged. However, other than documents signed by plaintiff under penalty of perjury, the court finds that these documents are confidential settlement documents which are not relevant, not admissible, and therefore not discoverable, except as follows: [¶] 2. Plaintiff is ordered to produce all documents which he signed under penalty of perjury that are responsive to [Volkswagen's] request for production of documents. . . . [¶] 3. Plaintiff is ordered to supplement his responses to [Volkswagen's] request for production of documents to plaintiff [Set One], request Nos. 42, 44, and 72 in accordance with Code of Civil Procedure § 2031. Plaintiff is ordered to identify any documents which he has signed under penalty of perjury. Plaintiff is further ordered to identify any documents he has previously produced in this matter that are responsive to [Volkswagen's] request for production of documents. Plaintiff is not required to produce a privilege log [or] to identify documents which he has not signed under penalty of perjury."

---

[1] *The request defined a document to "refer to each and every claim form, documentation, evidence, transcript, receipt of payment(s) received, summary, as well as electronic copies or printouts of the electronic copies of any claim form, documentation, evidence, transcript, receipt, or summary."*

Volkswagen filed a petition for a writ of mandate, requesting this court to direct the trial court "to order plaintiff to produce all Proofs of Claim, including those that were signed by plaintiff's attorneys." After requesting informal opposition, we issued an order to show cause.

Volkswagen argues that the requested documents are discoverable because they are relevant, admissible, reasonably calculated to lead to the discovery of admissible evidence and not confidential settlement documents, and argues further that even if they were confidential, they would still be discoverable. Rusk maintains that this discovery dispute does not warrant writ relief, that Volkswagen has an adequate remedy at law, that the trial court ruled correctly, and also suggests that the issue is moot because there are no additional documents to be produced.

## DISCUSSION

### I. *The Petition Warrants Writ Review*

Generally, discovery orders are not reviewable by extraordinary writ. (*Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739].) Writ review may be appropriate, however, to prevent an unjustifiable denial of discovery. (*Lehman v. Superior Court* (1986) 179 Cal.App.3d 558, 562 [224 Cal.Rptr. 572]; see also *Wagner v. Superior Court* (1993) 12 Cal.App.4th 1314, 1317 [16 Cal.Rptr.2d 534].) Rusk asserts that Volkswagen has an adequate remedy at law here because discovery is still open and Volkswagen may "ask any proper questions of Mr. Rusk directly." But questioning a party is rarely an adequate substitute for access to documents which ordinarily are more reliable, may be used for such purposes as refreshing recollection and impeachment, and may lead to the discovery of other admissible evidence. Volkswagen's continuing ability to depose or submit interrogatories to Rusk does not provide an adequate remedy at law. We conclude that writ review is appropriate in this case to resolve what we are advised is a recurring question in other asbestos litigation.

### II. *Scope of the Dispute*

In opposing issuance of a writ of mandate, Rusk has suggested that a writ "would not result in a further production of documents." This suggestion appears to be based on an unduly narrow reading of Volkswagen's request, generated in turn by some imprecision and inconsistency in the terminology in Volkswagen's papers. As noted above, Volkswagen's petition in this court seeks the production of "Proofs of Claim," yet this term was not used in

Volkswagen's production request or in its motion to compel production. Moreover, to illustrate the type of information it is seeking, Volkswagen submitted a copy of the proof of claim form that Rusk filed in the Kaiser bankruptcy proceedings.[2] Rusk correctly points out that there is a difference between the bankruptcy court and a bankruptcy trust, and that the proof of claim form that a claimant must file with the bankruptcy court (Form B10) is not necessarily the same as the claim form that is submitted to a bankruptcy trust, nor is the supporting documentation necessarily the same.

The record contains limited information concerning the operations of so-called "bankruptcy trusts." The Manville Personal Injury Settlement Trust and the Western Asbestos Settlement Trust were each established by a bankruptcy court pursuant to plans of reorganization under chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et seq.), with limited funds to be used to settle asbestos exposure claims against the bankrupt company.[3] Rusk's attorneys assert that "[e]ach bankruptcy trust establishes unique guidelines, procedures and forms for negotiating a claim with the trust." So far as the record discloses, there is no such bankruptcy trust for Kaiser, and there is no indication as to the number of other companies included in the document request for which bankruptcy trusts have been established.

Not having access to the documents that Rusk submitted to the trusts, Volkswagen's request for production was understandably broad: "all documents" submitted to the respective trusts. Rusk's initial response consisted solely of objections and provided no disclosure that he had provided any materials to any of the trusts. Subsequently Rusk filed a supplemental

---

[2] The proof of claim form requests specified information, including the amount claimed, and calls for the attachment of supporting documentation. Rusk attached to his claim form a statement reading as follows: "The documentation which supports each claim is quite voluminous and will be provided as required. They include answers to standard interrogatories, deposition transcripts, extensive documentation of the medical diagnosis, product identification summaries, and in some instances economic loss reports, all of which support the claim against [Kaiser]."

[3] The trusts are intended to qualify as "qualified settlement fund[s]" within the meaning of section 1.468B-1 et seq. of the Treasury Regulations. (See 26 C.F.R. § 1.468B.) Rusk's opposition in the trial court included information concerning the Manville Personal Injury Settlement Trust taken from the trust Web site, to which no objection appears to have been taken. The history provided of the trust reads in part: "The Trust was created as an independent organization to distribute funds as equitably as possible while balancing the rights of current claimants against those of future, unknown claimants. The Trust's mission is to 'enhance and preserve the Trust estate' in order to 'deliver fair, adequate, and equitable compensation to (claimants), whether known or unknown.' The Trust was established as a negotiation based settlement organization pursuant to Plan provisions which made it clear that claimants did not need to litigate or threaten to litigate in order to negotiate a fair settlement."

response in which, purportedly in compliance with Code of Civil Procedure section 2031.240, subdivision (b),[4] he "identifie[d] plaintiff's confidential settlement information packet[s] provided to" the Johns-Manville Corporation and Western Asbestos trusts, without any information as to the contents of these "packets." In opposing the motion to produce, Rusk represented the following: "All documents relating to plaintiff's claims filed with these Trusts contain both plaintiff's and the Trust's efforts to negotiate a settlement. These documents include plaintiff's proof of claim form, the Trusts' categorization and valuation of plaintiff's claim, the Trusts' offer and release form, if any, plaintiff's acceptance or dispute of the Trusts' categorization or evaluation, and any miscellaneous correspondence in furtherance of settlement." Rusk also submitted with his opposition pages from the Western Asbestos Settlement Trust Web site entitled "Claim Packet Information—Critical Claim Documents" which indicate that much more is included in the packet. The documents "necessary to complete the claim process" include, among other things, a claim form with sections entitled "Diagnosis," "Chest X-Ray," "CT Scan," "Pulmonary Function Test," "Pathology Report," "Land Exposure," "Shipboard Exposure," and "Secondary Exposure," a "Traditional Occupation List," a "Site List" and a "Ships List." It is thus reasonable to assume that the submission to the bankruptcy trust includes information and possibly supporting documentation describing a claimant's history of asbestos exposure and medical condition. The packet likely includes materials such as those described generally in Rusk's attachment to the Kaiser proof of claim. (See fn. 2, *ante.*)

Thus, for present purposes we construe Volkswagen's request to include all documentation submitted by Rusk to bankruptcy trusts, if they exist, for the specified companies. The request is not for proofs of claim or other documents filed with the bankruptcy court.[5] Nor, contrary to the implication in Rusk's opposition, does the request seek the production of documents prepared or submitted to him by the bankruptcy trust, which would include the trust's evaluation of his claim and settlement offers.[6] However, Volkswagen's request is broad enough to encompass all materials submitted on Rusk's behalf to the trust, including the amount of his claim, information

---

[4] Code of Civil Procedure section 2031.240, subdivision (b) provides: "If the responding party objects to the demand for inspection of an item or category of item, the response shall do both of the following: [¶] (1) Identify with particularity any document . . . falling within any category of item in the demand to which an objection is being made. [¶] (2) Set forth clearly the extent of, and the specific ground for, the objection. . . ."

[5] That is not to say that a document submitted to a bankruptcy trust that was also filed in the bankruptcy court is not within the scope of the request.

[6] Because documents produced or submitted by the trust are not at issue here, it is unnecessary for us to take judicial notice of the case valuation matrix for the Western Asbestos Trust, as requested by Rusk. Accordingly, Rusk's request for judicial notice is denied.

concerning his work history and medical condition, and supporting documentation. The request is also broad enough to include settlement proposals and statements that may have been made in connection with settlement negotiations.

Although both parties have taken unacceptably extreme positions concerning the documents that are or are not discoverable, their briefs address the relevant issues. In the interest of minimizing further disputation, we shall attempt to define the proper scope of production in response to Volkswagen's request. In issuing a writ of mandate, the court is not limited by the wording of the prayer in the petition, but may grant relief as it deems appropriate. (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1113 [17 Cal.Rptr.3d 225, 95 P.3d 459]; *Sacramento City Police Dept. v. Superior Court* (1984) 156 Cal.App.3d 1193, 1197, fn. 5 [203 Cal.Rptr. 169], disapproved on other grounds in *People v. Memro* (1985) 38 Cal.3d 658, 683, fn. 26 [214 Cal.Rptr. 832, 700 P.2d 446].)

III. *Discoverability Does Not Turn on the Admissibility of the Evidence or on Whether Documents Were Signed by Rusk*

■ Code of Civil Procedure section 2017.010 authorizes the production of any nonprivileged document that "is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." At the hearing on the motion to compel, the trial court correctly recited this standard, but also made a comment suggesting that the inadmissibility of a document might justify the denial of discovery.[7] Paragraph 1 of its order, which made a finding of inadmissibility, seems to confirm that this factor was significant in determining the scope of the production ordered.

The admissibility of a document bears on its discoverability in the sense that if the document is admissible, it necessarily is discoverable. (*Norton v. Superior Court* (1994) 24 Cal.App.4th 1750, 1760–1761 [30 Cal.Rptr.2d 217].) But the inverse is not necessarily true: the fact that evidence is not admissible does not mean that it is also not discoverable. A "claim that discovery is not warranted because the evidence disclosed would not itself be admissible is untenable. It is settled that admissibility is not prerequisite to

---

[7] The comment was, "[I]f it is clear to me that something is not going to be admissible, that the right to have discovery of that isn't absolute. . . . I mean, if something in my mind is clearly inadmissible, then I think that the right to discovery, at least to the extent of everything—I know that there is a dichotomy in the law which seeks a balance, but I think in terms of the limits of discovery, the scope of it, I have to take into account somewhat the possibility of admissibility."

discovery." (*Davies v. Superior Court* (1984) 36 Cal.3d 291, 301 [204 Cal.Rptr. 154, 682 P.2d 349]; see also *Glenfed Development Corp. v. Superior Court* (1997) 53 Cal.App.4th 1113, 1117 [62 Cal.Rptr.2d 195] ["Admissibility is *not* the test, and it is sufficient if the information sought might reasonably lead to other, admissible evidence"]; *Norton v. Superior Court, supra,* 24 Cal.App.4th at pp. 1760–1761.)

██ Thus, Rusk's argument that the documents Volkswagen seeks are protected from discovery by Evidence Code section 1152 provides no justification for the trial court's ruling. Section 1152 provides, in pertinent part, that "[e]vidence that a person has, in compromise . . . furnished . . . or promised to furnish money or any other thing . . . to another who has sustained . . . loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it." Volkswagen maintains that, although neither statute precludes discovery here, Evidence Code section 1154 comes closer to providing the protection Rusk seeks. Section 1154 provides protection for offers to discount a claim.[8] Volkswagen argues correctly that neither Evidence Code section 1152 nor section 1154 is dispositive because each is directed at the admissibility of evidence, not its discovery. This is clear from the language of both sections, which speak of the *inadmissibility* of evidence. This contrasts sharply, for example, with the language of Evidence Code section 1119 (protecting the confidentiality of mediations), which provides that no evidence of mediation proceedings "is admissible or subject to discovery." (Evid. Code, § 1119, subd. (b).)

Furthermore, Evidence Code sections 1152 and 1154 are not absolute bars to admissibility, since a settlement document may be admissible for a purpose other than proving liability. (See, e.g., *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 887 [221 Cal.Rptr. 509, 710 P.2d 309], superseded by statute on other grounds in Ins. Code, § 12340.11 [admitting settlement offer not to prove liability for loss, but to prove breach of covenant of good faith and fair dealing]; *Carney v. Santa Cruz Women Against Rape* (1990) 221 Cal.App.3d 1009, 1023–1024 [271 Cal.Rptr. 30] [admitting apology written pursuant to a settlement agreement to show the truth or falsity of statements in a newsletter]; *Truestone, Inc. v. Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 725 [209 Cal.Rptr. 757] [statement in settlement letter admitting debt, admissible as an admission against interest].)

---

[8] Evidence Code section 1154 provides: "Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act, or service in satisfaction of a claim, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove the invalidity of the claim or any part of it."

■ Although admissibility is not a prerequisite to discoverability, a heightened standard of discovery may be justified when dealing with information which, though not privileged, is sensitive or confidential. (See, e.g., *Britt v. Superior Court* (1978) 20 Cal.3d 844, 855–856 [143 Cal.Rptr. 695, 574 P.2d 766] [establishing a balancing test to protect private information such as associational privacy and medical histories that do not relate to conditions at issue in litigation]; *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977] [requiring special procedures to protect third parties' bank records]; *Boler v. Superior Court* (1987) 201 Cal.App.3d 467, 472 [247 Cal.Rptr. 185] [requiring a showing of "direct relevance" to prevent searching for marginally pertinent sensitive information].) Nonetheless, the cases that have approved a heightened standard are concerned primarily with protecting particularly sensitive matters, such as sexual or psychiatric histories, or the privacy interests of third parties. (See, e.g., *Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court* (1996) 51 Cal.App.4th 233, 237–239 [58 Cal.Rptr.2d 791] [settlement agreement of third parties].) In contrast, what is at issue here is information bearing on the very injury for which Rusk himself is suing Volkswagen. No third party interests are at stake.[9] There is no reason to provide heightened protection for information concerning Rusk's work history, which plainly is relevant and not confidential, or concerning his medical condition which is directly at issue and undoubtedly substantially disclosed in materials that have already been produced during the course of discovery.

■ Finally, we see no basis for limiting the production of material information to documents signed by the plaintiff himself rather than by his attorney, as the trial court did. Statements made by agents authorized to act on behalf of a party are admissible against that party. (Evid. Code, § 1222.) An adequate foundation must be laid to substantiate the authorization

---

[9] In theory, the requested documents might implicate the third party privacy interests of the trusts to which Rusk submitted his claims. The extent of any privacy rights of a business entity is unsettled. (See *Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 793 [195 Cal.Rptr. 393] [privacy is limited to "people" and business entities are not "people"]; see also *Ion Equipment Corp v. Nelson* (1980) 110 Cal.App.3d 868, 878–879 [168 Cal.Rptr. 361]; contra, *H & M Associates v. City of El Centro* (1980) 109 Cal.App.3d 399, 409 [167 Cal.Rptr. 392] [corporate right to privacy invaded by city's improper disclosure of information]; see also *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718 [21 Cal.Rptr.2d 200, 854 P.2d 1117] [closely held corporation's right to privacy must be considered in discovery dispute arising out of shareholder's marital dissolution dispute].) *Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1260, 1287 [50 Cal.Rptr.2d 366] held that a corporate medical clinic does not enjoy constitutional privacy protection, but nonetheless has certain privacy interests. Regardless, in this case no one has suggested that the bankruptcy trusts have any independent privacy concerns other than protecting the privacy interests of the claimants themselves, and the materials that Volkswagen seeks relate solely to Rusk. The production request seeks only documents submitted by Rusk to the trusts, not the trusts' responses or personal data relating to any other individual.

(*id.*, subd. (b)), but absent unusual circumstances this burden can ordinarily be met in the case of an attorney acting within the scope of his client's representation. (See, e.g., *Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103, 1108–1109, fn. 7 [73 Cal.Rptr.2d 174] [letter by counsel to insurer contained an admission within the meaning of Evid. Code § 1222]; see also 32 C.J.S. (2005) Evidence, § 451 [the rule that "an attorney may make admissions of fact which will affect his client provided that the statement is made during the performance of duties of his employment within the actual or ostensible scope of the authority delegated and during the continuance of his agency" is nearly universally supported].) And in all events, a document containing relevant information may lead to the discovery of admissible evidence whether signed by the attorney or by the client.

Thus, the scope of production to which Volkswagen is entitled turns not on the factors relied on by the trial court, but requires careful analysis of the information that Volkswagen is seeking.

IV. *The Discoverability of the Requested Materials Requires Consideration of the Types of Documentation Submitted to the Bankruptcy Trusts*

Rusk characterizes the documents Volkswagen has requested as "confidential settlement information packets" but, as indicated above, the submissions contain diverse information and documentation. The proper resolution of this discovery dispute requires consideration of the different types of information included within the production request. So far as can be determined from the record now before us, there are at least three categories of information that should be considered.

1. *Claim Forms*

Whether included on a formal proof of claim form such as Form B10 used to assert a claim in bankruptcy proceedings, or on a similar form required by the bankruptcy trust, an individual seeking compensation from the trust necessarily will advise the trust of the amount of his or her claim.[10] Rusk implies that the statement of this amount is necessarily a settlement

---

[10] A proof of claim is a written statement executed by a creditor or the creditor's authorized agent stating, inter alia, the amount the creditor claims is owed to it by the debtor. (2 Norton Bankr. L. & Prac.2d (1994) § 41:5.) When properly executed and filed with a bankruptcy court, the claim is automatically allowed unless objected to by a party-in-interest. (*Id.,* § 41.6.) The filing of a proof of claim triggers the bankruptcy process of claims allowance and disallowance. (1 Norton Bankr. L. & Prac.2d, *supra,* § 4:31.) Proofs of claim may be filed with the bankruptcy court or with a claims agent, if one has been appointed. (2 Norton Bankr. L. & Prac.2d, *supra,* § 41:5.) A proof of claim must "conform substantially" to the official form (Form B10). (*Ibid.*)

offer, and thus neither relevant nor likely to lead to relevant evidence. But this is not necessarily so. The claim form is more likely to be analogous to a complaint than to a settlement demand. A statement by a claimant concerning the extent of his injuries or disease, or concerning the amount of damages he or she claims to have suffered, if "not connected with an offer of compromise," may well constitute an admissible admission. (*Moving Picture etc. Union v. Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 402 [86 Cal.Rptr. 33]; see *Caira v. Offner* (2005) 126 Cal.App.4th 12, 35–36 [24 Cal.Rptr.3d 233].) "In considering whether a person's statement amounts to an ordinary admission or constitutes an offer of compromise, the intention of the party is dispositive." (*Moving Picture etc. Union v. Glasgow Theaters, Inc., supra*, at p. 402.) If the statement was not intended as a concession but as an assertion of " ' "all that he deemed himself entitled to," ' " it is not an offer of compromise. (*Ibid.*)

We do not at this point preclude the possibility that the amount stated in Rusk's claim forms should be treated as a compromise offer. If the bankruptcy trust had previously issued a formula or "matrix" indicating the amount it would pay a claimant under certain conditions and the amount stated in the claim form was intended to indicate a willingness to accept that amount, the amount claimed would not be a statement by Rusk of what he considers his total damages, and the statement would be inadmissible under Evidence Code section 1154. It is premature, however, to decide this question. Neither we, the trial court, nor Volkswagen has had the opportunity to review the claim form or to probe the intention with which it was prepared and submitted. If the claim form should be offered in evidence at trial, the court will need to decide this issue. At this point it is sufficient to conclude that the claim form may lead to an admissible admission against interest.

The disclosure of the amount that Rusk claimed from the various trusts, whether or not ultimately admissible, will not prejudice Rusk's legitimate interests. The trial court has ordered Rusk to disclose the amounts, if any, he has received in settlement from each of the trusts and Rusk does not question the propriety of this order. (See, e.g., *Home Ins. Co. v. Superior Court* (1996) 46 Cal.App.4th 1286 [54 Cal.Rptr.2d 292].) The amounts stated in the claim forms, if different from the settlement figure, can only be greater than the settlement amount. Even if a settlement with the trust has not been reached, the disclosure to Volkswagen of the amount Rusk offered to accept from another entity should not prejudice Rusk's position.

Rusk cites *Covell v. Superior Court* (1984) 159 Cal.App.3d 39 [205 Cal.Rptr. 371], for the proposition that Evidence Code section 1152 precludes the discovery of settlement offers. But *Covell* stands for no such broad proposition. *Covell* was a malicious prosecution action in which the plaintiff

refused to answer questions about settlement offers he had made in the underlying action. The court held that this information was neither relevant to the malicious prosecution suit nor reasonably calculated to lead to the discovery of admissible evidence because the relevant issue was the state of mind of the defendant in bringing the underlying action, not whether the plaintiff had recognized the validity of the claim in the earlier action. (159 Cal.App.3d at p. 43.) The court pointed out that "[t]he statutory protection afforded to offers of settlement [in Evidence Code section 1152] does not elevate them to the status of privileged material. Our inquiry therefore must focus on whether discovery of settlement negotiations is 'relevant to the subject matter involved in the pending action,' or 'appears reasonably calculated to lead to discovery of admissible evidence.' " (*Id.* at p. 42.)

### 2. *Supporting Factual Documentation*

■ The materials submitted in support of Rusk's opposition to the motion to produce indicate that, either as part of the claim form itself or as a separate document submitted in conjunction with the claim form, Rusk has provided the bankruptcy trusts with factual information concerning both his work history and his medical condition. Both unquestionably are directly pertinent to the claim Rusk is asserting against Volkswagen. And Volkswagen has good reason to ascertain what Rusk has told others about these issues. Since each party who shares responsibility for any asbestos-related disease from which a claimant suffers is liable only for its proportionate share of noneconomic damages (see *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 528 [66 Cal.Rptr.2d 438, 941 P.2d 71] [applying Civ. Code, § 1431.2 to limit defendant's liability for noneconomic damages caused by asbestos exposure to defendant's proportional share of the fault]; *Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847 [97 Cal.Rptr.2d 240]), each will understandably be concerned to determine whether the claimant has overstated its share of responsibility. The number of days and the conditions under which a claimant was exposed to the asbestos-containing materials of one responsible party bears directly upon the extent of the liability of the others. Each therefore will have very good reason to compare what a claimant has said in this regard in supporting a claim against another responsible party. While there is less likelihood that a claimant would describe his or her medical condition differently to different responsible parties, a litigant still has a legitimate interest in evaluating the consistency of a claimant's prior statements in this regard. To the extent that such information is contained in Rusk's submission to a bankruptcy trust, therefore, Volkswagen has good reason to review it.

■ The information submitted to the trusts may be in one of two forms. The information may consist of questionnaires or other forms completed by

the claimant or by the claimant's attorney. Or the information may be contained in documents prepared by others, such as personnel records or medical reports. If the latter, there ordinarily will be no question about discoverability since even the use in settlement negotiations of relevant documents prepared independently of those negotiations does not shield them from discovery. Even under Evidence Code section 1119, which exempts mediation proceedings from being admitted into evidence or discovered, the use of a writing in a mediation does not preclude that document from being admitted or produced in discovery unless it was specifically prepared for use in the mediation. (Evid. Code, § 1120; *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 417 [15 Cal.Rptr.3d 643, 92 P.3d 260, 93 P.3d 260].) Whether answers prepared by the claimant or the claimant's attorney were prepared in the normal course of submitting a claim or as part of ongoing settlement negotiations may in some cases present a closer question, but there is no reason to presume the latter, and certainly not for the purposes of discovery. It will be time enough if and when such answers are offered in evidence at trial.

### 3. *Attempts to Negotiate Compromise*

From Rusk's description of the materials included in the "settlement information packets" it is possible that some documents evidencing true settlement proposals or statements made in the course of negotiating a settlement with the trust may be included. Such materials of course are inadmissible to prove or disprove liability. (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 13 [151 Cal.Rptr. 323, 587 P.2d 1136]; *Caira v. Offner, supra,* 126 Cal.App.4th at pp. 32-36.) Any such materials are subject to discovery only if Volkswagen can articulate another basis for admissibility or for reasonably believing they may lead to the discovery of evidence that is admissible. (*Norton v. Superior Court, supra,* 24 Cal.App.4th 1750.) While Volkswagen has not made such a showing, neither has Rusk identified any documents in the packet, such as correspondence between the attorneys, which there is any reason to believe contain such an exchange.[11] Were Rusk to itemize such documents and Volkswagen fail to satisfy the court that there is a reasonable likelihood that the documents will lead to admissible evidence, the court would be justified in refusing to order production of such materials. An in camera review of the particular documents might well be necessary for the court to perform a meaningful evaluation. However, absent such an itemization, discovery should be permitted and any questions concerning admissibility left for trial.

---

[11] Moreover, we reiterate that the request for production does not include offers, evaluations or other documents received *from* the bankruptcy trusts.

## V. *The Trial Court Must Reconsider the Motion Under the Correct Standards*

██ We conclude that the discovery order entered in the trial court must be reevaluated under the standards we have discussed. Discovery of the materials submitted to the bankruptcy trusts should not be denied because the documents may be inadmissible or because they were prepared or signed by Rusk's attorney rather than by himself. If the requested information is reasonably calculated to lead to admissible evidence, which includes admissions against interest, discovery should be permitted. ██ The trial court retains the discretion to weigh the burden of compliance against the likelihood of producing helpful information, to avoid duplicative production, and to narrow demands if appropriate to balance the reasonable concerns of both parties. (See *Borse v. Superior Court* (1970) 7 Cal.App.3d 286, 289 [86 Cal.Rptr. 559] [limiting production of settlement information so as not to be excessive, burdensome, or oppressive]; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 8:1497.1 [in resolving disputes about document production court is to weigh probative value of, records against the resulting cost, time, expense and disruption of normal business].) However, the court must use its discretion to ensure that proper criteria are applied, and that Volkswagen is not denied the production of pertinent materials it has not seen based simply on Rusk's assurance that the documents contain no information that is not already known to Volkswagen.

██ In exercising its discretion, the trial court should observe the approach articulated in *Norton v. Superior Court, supra,* 24 Cal.App.4th at page 1761: "In accordance with the liberal policies underlying the discovery procedures, California courts have been broad-minded in determining whether discovery is reasonably calculated to lead to admissible evidence. [Citations.] As a practical matter, it is difficult to define at the discovery stage what evidence will be relevant at trial. Therefore, the party seeking discovery is entitled to substantial leeway. [Citation.] Furthermore, California's liberal approach to permissible discovery generally has led the courts to resolve any doubt in favor of permitting discovery. [Citation.] In doing so, the courts have taken the view if an error is made in ruling on a discovery motion, it is better that it be made in favor of granting discovery of the nondiscoverable rather than denying discovery of information vital to preparation or presentation of the party's case or to efficacious settlement of the dispute. [Citations.] The courts have also taken the view that wherever possible objections to discovery should be resolved by protective orders addressing the specific harm shown by the respondent as opposed to a more general attack on the 'relevancy' of information the proponent seeks to discover."

## DISPOSITION

Let a peremptory writ of mandate issue remanding this matter to the respondent superior court and directing the superior court to vacate its order granting in part and denying in part defendant Volkswagen of America, Inc.'s motion to compel further production of documents, dated December 9, 2005, and to issue a new order consistent with this opinion. Volkswagen shall recover its costs.

McGuiness, P. J., and Siggins, J., concurred.