Filed 1/28/14  Center for Biological Diversity v. Cal. Fish & Game Commission CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA FISH AND GAME COMMISSION, <br><br>     Defendant and Appellant. | A137889 <br><br> (Alameda County <br> Super. Ct. No. RG12614930) |

## I. INTRODUCTION

This is an appeal and cross-appeal by the parties to an action brought under Code of Civil Procedure section 1021.5 (hereafter section 1021.5) from an order of the Alameda County Superior Court awarding plaintiffs attorney fees in the amount of $46,992 for their success in filing and pursuing a petition for a writ of mandate challenging the validity of a regulation adopted by the defendant California Fish and Game Commission (hereafter Commission).  The challenged regulation designated the Black-Backed Woodpecker (hereafter BBW) as a candidate species for protection under the California Endangered Species Act (CESA), i.e., Fish and Game Code sections 2050 et seq.   In its appeal, the Commission asks this court to overturn the trial court's order granting plaintiffs those attorney fees.  In their cross-appeal, plaintiffs also ask us to reverse that award, but on the basis that it was inadequate; they ask us to remand the case

1

to that court "with directions to calculate an adequate fee award . . . ." We will do neither but, instead, affirm the trial court's order awarding plaintiffs attorney fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 1, 2010, plaintiffs filed a petition with the California Department of Fish and Game asking it to list the BBW as a threatened or endangered species under the CESA. A little over a year later on December 15, 2011, the Commission considered adopting findings that the BBW was a "candidate species" under section 2068 of the Fish and Game Code and that, therefore, such a listing "may be warranted." (See Fish & Game Code, § 2073.5.) On the same date, the Commission adopted a regulation (former Cal. Code Regs., tit. 14, § 749.7, now ineffective for the reasons discussed below; hereafter former § 749.7) as an emergency regulation under the Administrative Procedure Act. That regulation "authorized the incidental take of the [BBW] during its candidacy under the" CESA. This was not the first time the Commission had adopted such an emergency regulation; on nine previous occasions, the Commission had relied on Fish and Game Code section 2084 and its regulations to permit the taking of "candidate species" of other animal and fish species.

The "incidental take" of the BBW under former section 749.7 was apparently authorized for four specific reasons, i.e.: (1) scientific, educational or management activities; (2) helping protect other endangered species or habitats; (3) fire response and vegetation management activities; and (4) forest protection and timber harvest projects. Another subsection of former section 749.7 reportedly established a reporting requirement requiring any "incidental take" of a BBW to be reported to the Department of Fish and Game's Wildlife Branch.

---

[1] The parties' briefing has made the preparation of this section of our opinion more time consuming than necessary. For example, the factual section of the Commission's opening brief includes very few citations to the record and omits some matters (e.g., the communications between the parties on January 4 and 5, 2012). Similarly, plaintiffs' opposition brief contains numerous miscitations to the record, including multiple citations to a blank page in the clerk's transcript.

Shortly after the Commission adopted former section 749.7, plaintiffs attempted to persuade it that the proposed regulation was not justified by any specific emergency that would exempt it from the requirements of the California Environmental Quality Act (CEQA). They did so via a letter dated January 4, 2012,[2] in which they contended, to both the Commission and the Office of Administrative Law (OAL), that the proposed former section 749.7 was not justified by any specific emergency that would justify a CEQA exemption. Nonetheless, the following day, January 5, the OAL approved the emergency regulation, making it effective the following day, i.e., January 6, for a period of six months. However, under the Government Code such a regulation can be extended for an additional six months if such is approved by the OAL before the end of the original six-month period (see Gov. Code, § 11346.1, subd. (e)) and, per plaintiffs, such had been done in the nine previous occasions involving "candidate species."

On January 31, plaintiffs filed their petition challenging the validity of former section 749.7. According to the Commission's pleadings below, it then "determined that committing the Commission's time and resources to the defense of a regulation that would in all likelihood become moot before a final ruling on the merits of the action could be had, could not be justified as an appropriate use of public funds" and its attorneys were then "instructed to . . . seek a negotiated resolution" of the matter, including setting aside former section 749.7.

According to plaintiffs' filings in the trial court, on March 16 "the parties participated in their first settlement meeting . . . ." At that meeting, counsel for the Commission allegedly informed plaintiffs' counsel that it was "determined not to defend the lawsuit and it recognized that the correct procedures were not followed" in adopting former section 749.7. Plaintiffs' counsel then drafted a proposed stipulated judgment and settlement agreement and forwarded them to the Commission's counsel on March 21. The Commission did not agree to these drafts but, after further negotiations, the final draft of a settlement agreement was agreed to and executed on May 9. In that agreement,

_____

[2] All further dates noted are in 2012.

3

the parties stated that it was entered into "without prejudice to Petitioners' right to seek recovery of attorney fees and costs in this matter."

On May 29, the trial court entered a stipulated judgment in the case vacating former section 749.7; attached to that judgment was the parties' signed settlement agreement.

In the subsequent months, extensive negotiations regarding the appropriate amount of attorney fees took place between the parties. These negotiations were unsuccessful and, on September 26, plaintiffs filed their motion for such fees, asking for a total of $116,690.50, including costs and a 2.0 multiplier, on the basis that their counsel had taken the case on a contingency basis.

After receiving opposition from the Commission, a response thereto from plaintiffs, and hearing oral argument on November 19, the trial court granted plaintiffs a total award of $46,992. It did so by making the multiplier only 1.2 and reducing plaintiffs' counsels' alleged hours—mostly those spent on fee negotiation—by approximately 45 percent overall.

Both parties filed timely notices of appeal.

### III. DISCUSSION

A.  *The Commission's Appeal From the Award of Attorney Fees*

Our standard of review of a trial court order granting attorney fees under section 1021.5 and also regarding the amount thereof is, generally, abuse of discretion. (See, e.g., *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578 (*Graham*); *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094-1098; *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830.) In *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 159 (*Collins*), one of our sister courts summarized the law thusly: "The trial court is in the best position to determine the reasonable value of professional services rendered in a case before it and has broad discretion to determine the reasonable amount of an attorney fee award. [Citation.] A court abuses its discretion only if there is no reasonable basis

4

for its decision under the governing law and the reviewing court concludes that the court clearly erred. [Citation.]"

However, as this court observed a few years ago, there are other considerations regarding the award of attorney fees under section 1021.5 that need to be taken into account. In *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331 (*Lyons*), we approvingly quoted a leading text regarding those other considerations: " ' "Attorney fees are recoverable under section 1021.5 (1) by a successful party, (2) in an action that has resulted in the enforcement of an important right affecting the public interest, (3) if a significant benefit has been conferred on the general public or a large class of persons, and (4) the necessity and financial burden of private enforcement are such as to make the award appropriate. The statute's purpose is to encourage public interest litigation that might otherwise be too costly to pursue. [Citations.]

" ' "The trial court is to assess the litigation realistically and determine from a practical perspective whether [the statutory] criteria have been met." [Citation.] Rulings under section 1021.5 are reviewed for abuse of discretion. [Citations.] The questions are whether the court applied the proper legal standards under section 1021.5 and, if so, whether the result was within the range of the court's discretion [citation], i.e., whether there was a reasonable basis for the decision [citation].' [Citation.]

" 'Although [section] 1021.5 is phrased in permissive terms (the court "may" award), the discretion to deny fees to a party that meets its terms is quite limited. The [S]upreme [C]ourt in *Serrano v. Unruh (Serrano IV)* (1982) 32 [Cal. 3d] 621, 633, noted that the private attorney general theory, from which [section] 1021.5 derives, requires a full fee award "unless special circumstances would render such an award unjust." ' [Citations.]" (*Lyons, supra,* 136 Cal.App.4th at pp. 1343-1344; see also *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213-1214.)

In its opening brief, the Commission relies on our opinion in *Lyons*—a decision in which we *reversed* a trial court's denial of attorney fees under section 1021.5—in contending that "the fee award under review was an abuse of the trial court's discretion, in that the award was made with no supporting evidence—a fact conceded by the trial

5

court in its Fee Order—and in the absence of any satisfaction of section 1021.5's mandatory criteria." We reject both of the Commission's arguments, i.e., that there was "no supporting evidence" and that the trial court violated section 1021.5's standards.

Rather surprisingly, the Commission's counsel, i.e., the Attorney General's office, contends—indeed twice in its opening brief—that the statement in the trial court's order granting attorney fees that "[c]ounsel never presented evidence or legal arguments to the Court" means that plaintiffs' counsel never offered evidence to the trial court regarding their expenditure of time and resources in reaching the settlement with the Commission regarding the disposition of former section 749.7. This argument is erroneous.[3]

First of all, the statement the Commission quotes from the trial court's order was in a portion of that order dealing with whether a multiplier should be applied to the number of hours invested in the litigation by plaintiffs' counsel. That counsel had requested a multiplier of 2.0 while the Commission opposed any multiplier at all. As noted above, the trial court concluded, after a careful analysis of the records presented to it by the parties, that a multiplier of 1.2 was proper. The trial court's statement quoted by the Commission's counsel was simply a reference to the fact that it held no evidentiary hearings at which witnesses were called nor documents introduced into evidence, etc. Thus, per that court, plaintiffs' requested 2.0 multiplier was too high. But the trial court was clearly not saying there was nothing in the record before it demonstrating plaintiffs' entitlement to attorney fees. There certainly was such, including several declarations and much supporting material regarding plaintiffs' counsels' investment of time and resources in support of their petition for a writ of mandate. And there was also a hearing before that court on this issue.

Second, the Commission contends that the trial court abused its discretion by assuming that plaintiffs' action established that the Commission's earlier decisions

---

[3] In the section of its reply brief dealing with the plaintiffs' cross-appeal regarding the amount of attorney fees that should be awarded, the Commission's counsel states: "[A]ssuming arguendo that a fee award was otherwise justified, the court's review of the fees issue is clearly detailed and carefully analyzed." We agree.

6

regarding nine other endangered species were unjustified.  This argument is based on a paragraph in the trial court's decision which commenced by noting that plaintiffs' "action conferred a significant nonpecuniary benefit on the general public because the general public receives a significant benefit when public agencies follow appropriate procedures."  The court then referenced nine previous "emergency regulations" involving other fish and game species, and took judicial notice thereof.  It then stated:  "By bringing this action, Petitioners challenged and appear to have changed what appears to be the Commission's ongoing practice of adopting emergency regulations without making the required factual findings."

Again, the Commission has substantially overreacted to this statement in the trial court's order.  First of all, the trial court did not state or even imply that this past history regarding "emergency regulations" was in any way a major basis for its decision to award attorney fees, much less the measurement of such fees.  Thus, the court found a significant public benefit accrued *in this case* because of the enforcement of a requirement that the Commission follow the proper administrative procedures.  We agree with that determination: via the settlement of this case, the Commission acknowledged that the proper procedure was not followed in adopting former section 749.7.  Thus, the settlement necessarily required the Commission to reevaluate the manner by which it adopts "emergency regulations."

Additionally, the trial court did not make an express finding that the outcome— again, a stipulated outcome—of the current case and what had or had not happened regarding the previous nine "emergency regulations" were necessarily related; it said only that by bringing the present action plaintiffs "appear to have changed" the Commission's past practice of adopting emergency regulations without the required findings.  We have no difficulty in concluding that the trial court's brief reference to those prior emergency regulations adopted by the Commission had no prejudicial impact on its award of attorney fees or its decision regarding the proper amount thereof.

Next, the Commission argues that the trial court violated Evidence Code section 1152 because it relied on plaintiffs' counsels' "recitation of what was supposedly said

7

during a mandatory CEQA settlement conference . . . as support for its order granting attorney fees against the Commission . . . ." We also reject this contention, because it ignores both (1) the basis of the trial court's order granting attorney fees and (2) the reach of Evidence Code section 1152.

That statute provides: "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he or she has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it." (Evid. Code, § 1152, subd. (a).)

The Commission contends that the trial court violated this statute by its "total reliance" on a recitation in a declaration filed by plaintiffs' counsel concerning what was said by the Commission's counsel in the parties' first settlement meeting on March 16. We disagree for several reasons. First of all, a simple reading of the trial court's order granting plaintiffs attorney fees makes clear that there was no "total reliance" by it on any recitation in the declaration filed by one of plaintiffs' counsel, Josh Chatten-Brown. That declaration is cited only once in the trial court's order granting attorney fees, and then only regarding the correct hourly rate to employ in computing the amount of attorney fees to be awarded. Further, the March 16 settlement conference of the parties is referenced only twice, but again nowhere in the trial court's brief references to that date is there anything suggesting, even slightly, that there was any "total reliance" by it on anything in the Chatten-Brown declaration in its determination of whether, and how much, attorney fees should be awarded to plaintiffs.

Finally on this point, but most importantly, the explicit language of Evidence Code section 1152, subdivision (a), undermines the Commission's argument. It expressly addresses evidence that "is inadmissible to prove . . . liability," and not the damages to be awarded once liability has been established—or, as here, effectively conceded. As noted above, per the settlement agreement of May 9, the Commission (1) conceded that it "did not have substantial evidence to support its finding that there was an emergency with

8

regard to the" BBW, (2) voted unanimously on March 7, i.e., a week prior to the settlement conference, "not to defend the lawsuit and directed its counsel to settle the case at the earliest opportunity, and (3) did so "without prejudice to Petitioners' right to seek recovery of attorney fees and costs in this matter." Thus, Evidence Code section 1152 is clearly inapplicable here because, from March 7 onward, the issue was *not* liability—the issue addressed by that statute—but the attorney fees and costs which might be awarded to plaintiffs. Section 1152 does not preclude the admission of such evidence. (See, e.g., *Volkswagen of America, Inc. v. Superior Court* (2006) 139 Cal.App.4th 1481, 1491; *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 296-297; *Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1479; *Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 396.)

Finally, the Commission argues that (1) plaintiffs are not the successful parties as required by section 1021.5, (2) their action did not result in the enforcement of an important right affecting the public interest, and (3) its results did not confer a significant benefit to the public. In these portions of its briefs, the Commission attempts, albeit with somewhat different wording, to minimize the substantive outcome of the litigation, i.e., the results achieved by plaintiffs by the settlement voiding former section 749.7. We will first summarize these arguments and then explain why none of them has merit.

The Commission first notes that the prayer for relief in plaintiffs' original petition sought both a declaration regarding whether the Commission's approval of former section 749.7 violated several specific statutory provisions because "absent a judicial declaration of the rights of the parties, the adoption of this type of regulation is likely to recur in the future." Next, it notes that another objective, set forth in that petition's prayer for relief, was to require the Commission to both set aside former section 749.7 and "to prepare and certify a legally adequate EIR for the project." Because neither of these specific requests for relief were achieved via the stipulated judgment and settlement agreement, the Commission argues, "neither of [plaintiffs'] objectives was realized." Quoting a passage from *Graham, supra,* 34 Cal.4th at page 557, it concludes this argument by stating that "the Commission acted to set aside its regulation not because of

9

the 'threat of victory' by [plaintiffs]," but " 'by dint of nuisance and threat of expense,' " i.e., "a pointless expenditure of public funds."

Next, citing several appellate court decisions, including this court's decisions in *Center for Biological Diversity v. California Fish & Game Com.* (2011) 195 Cal.App.4th 138 (*Center*) and *Karuk Tribe of Northern California v. California Regional Water Quality Control Board* (2010) 183 Cal.App.4th 330 (*Karuk Tribe*), the Commission argues that, under the rulings of those cases, "[n]othing has been achieved in this action that can be considered the enforcement of an important public right, as required by section 1021.5  Accordingly, [plaintiffs] have failed to satisfy this mandatory requirement for a fee award under that section."

Finally, the Commission argues that a "mandatory requirement of section 1021.5 is that an action must have resulted in the conferring of a "significant benefit' on the general public or a large class of persons.  No benefit, significant or otherwise, has been conferred here."  It then cites a number of appellate court cases in which the court either reversed a trial court's fee award or affirmed a denial of such fees on such a basis, and then concludes its argument by noting that, even without any specific actions being required of the Commission regarding the BBW, it "apparently suffered no detriment during that period, Petitioners' lack of concern notwithstanding."

We reject these various—albeit clearly related—arguments of the Commission for several separate and distinct reasons.  First of all, regarding the "successful parties" argument, the record makes clear that plaintiffs essentially got the relief they wanted via the litigation they initiated: a judgment (1) specifically setting aside former section 749.7, (2) ordering the Commission "to comply with each and every provision of the" attached settlement agreement between the parties, and (3) reserving jurisdiction in the trial court to enforce the terms and conditions of that agreement.  Such was essentially the relief prayed for in the January 31, 2012, petition filed by plaintiffs, as the trial court also explicitly found.

Second, in its order granting plaintiffs attorney fees, the trial court itself addressed the issue of whether the terms of section 1021.5 had been met.  It said, quoting the

10

language of that statute: "The action resulted in the enforcement of an important right affecting the public interest. In this case, Petitioners challenged [the Commission's] practice and prevailed. Although the protection of the Woodpecker in this case in isolation might not be an important right affecting the public interest, requiring public agencies to follow appropriate procedures when adopting regulations is an important public interest. [¶] The action conferred a significant nonpecuniary benefit on the general public because the general public receives a significant benefit when public agencies follow appropriate procedures. . . . By bringing this action, Petitioners challenged and appear to have changed what appears to be the Commission's ongoing practice of adopting emergency regulations without making the required factual findings. [¶] In addition, by providing a regulatory benefit for the Woodpecker, Petitioners conferred a benefit on the general public because the people of the state of California have an interest in California wildlife."

We have no difficulty in finding that these conclusions by the trial court are entitled to considerable deference by this court. Our Supreme Court has made clear, indeed several times, that we should accord such findings by the trial court in a section 1021.5 action such deference. Thus, in its decision in *Graham, supra,* 34 Cal.4th at page 578, it rejected an appellant's contention that the award of attorney fees in that section 1021.5 action was improper because the action had failed to confer a significant public benefit. The court stated: "This contention need not detain us long. We will uphold the trial court's decision to award attorney fees under section 1021.5, unless the court has abused its discretion. (*Hewlett v. Squaw Valley Ski Corp*. (1997) 54 Cal.App.4th 499, 544.) . . . [¶] In the present case, the trial court found that the problem addressed by the lawsuit implicated an issue of public safety, and that the lawsuit benefited thousands of consumers and potentially thousands more by acting as a deterrent to discourage lax responses to known safety hazards. In light of the facts reviewed in the first part of this opinion, we conclude the trial court did not abuse its discretion in finding that the lawsuit met the substantial benefit and public interest requirements of section 1021.5." (*Graham, supra,* 34 Cal.4th at p. 578; see also *Vasquez v. State of California* (2008) 45 Cal.4th 243,

11

250-251; *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685; *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 938. )  This court has ruled to the same effect three times recently.  (See *Center, supra,* 195 Cal.App.4th at p. 136; *Karuk Tribe, supra,* 183 Cal.App.4th at p. 363; *Lyons, supra,* 136 Cal.App.4th at p. 1344.)  Other courts of appeal have ruled similarly.  (See, e.g., *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391-392; *Hewlett v. Squaw Valley Ski Corp., supra,* 54 Cal.App.4th at pp. 543-546; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 169-175.)

For all the foregoing reasons, we reject the Commission's arguments that the trial court erred in its award of attorney fees to plaintiffs.

B.       *Plaintiffs' Cross-Appeal Regarding the Amount of Attorney Fees Awarded*

In its cross-appeal, plaintiffs contend that the trial court erred in reducing the number of hours invested by its counsel in the case for which they would be awarded fees.

In its order granting attorney fees to plaintiffs, the trial court devoted almost a full page of its single-spaced order of November 21 to the issue of "AMOUNT OF FEES— LODESTAR."  In eight paragraphs on that page, it discussed the number of hours invested by plaintiffs' counsel in the various phases of the litigation including (1) the hours plaintiffs' counsel spent before the Commission conceded that it would not contest the validity of former section 749.7, and (2) the hours they spent in "drafting the settlement agreement and concluding the settlement."  It concluded that some reduction was appropriate regarding both the number of hours invested in the litigation, and also that plaintiffs' counsel were asking for too many hours regarding the negotiation of the settlement and the drafting of the settlement agreement.  The court noted that plaintiffs sought compensation for a total of "102 hours on the administrative and legal proceedings" and, additionally, "50 hours on fee negotiation and the fee motion ($16,428), and 34 hours on the fee reply brief ($13,397)."

The trial court found these claims to be a bit excessive.  It allowed plaintiffs *all* the hours their counsel invested in the litigation before the Commission's March 16

concession, i.e., 42.9 hours, and an additional "30 hours drafting the settlement agreement and concluding the settlement" for a total of 72.9 hours. It found a blended rate of $400 per hour to be appropriate (a rate which plaintiffs do not contest on appeal), and thus awarded plaintiffs' counsel lodestar amounts of $29,160 for the litigation on the merits and $12,000 on the fee motion, for a total of $41,160. After the use of the 1.2 multiplier the court awarded for the merits portion of the litigation, this gave plaintiffs a total of $46,992 as compared to the amount they were seeking before the use of any multiplier, i.e., $73,737.50 ($43,912.50 + $16,428 + $13,397).

Bearing in mind the standard of review clearly applicable here, i.e., abuse of discretion, we find no error in the trial court's ruling. It clearly had reviewed all the pleadings filed by the parties both before and after the settlement on the merits—or lack thereof—of former section 749.7, including three declarations filed by counsel for plaintiffs and three on behalf of the Commission. And one of the latter was, we suspect, possibly influential to the trial court in reaching the conclusion it did to reduce the number of hours to reach its lodestar calculation. That document is an extended declaration by attorney Andre E. Jardini of the firm of Knapp, Petersen & Clarke (a firm which apparently specializes in the review and audit of legal billings) regarding his view of the requested fees. That declaration set forth—and with considerable specificity— why, in the declarant's view, "the fees requested by attorneys for petitioners are excessive." Jardini particularly questioned the number of hours invested by plaintiffs' counsel; he stated that, in his opinion, "[t]he tasks outlined do not coincide with the over 96 hours billed" during the time from the filing of the writ petition to the settlement agreement and concluded that "this amount of fees might be requested as compensation for a more lengthy or complex matter."

Based on its ruling regarding the hours invested by plaintiffs' counsel, it seems the trial court clearly agreed with this assessment.

In plaintiffs' brief to us on this subject, they acknowledge, as indeed they must, the clearly applicable abuse of discretion standard of review, but then, citing a few cases where attorney fees awards have been overturned or questioned, they say that the "trial

court's reduction in reasonable hours expended by Petitioners' counsel cannot be rationalized." They later refer to the "arbitrariness of the trial court's reduction" of the time invested by plaintiffs' counsel in, especially, the time period *after* the Commission conceded on the merits of the litigation and agreed to settle the case. Quoting *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133, they contend that "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all hours reasonably spent*, including those relating solely to the fee." But they promptly proceed to cite the principle relied on here by the trial court: the hours for which compensation is approved may be minus those "that result from inefficient or duplicative use of time."

And such was, indeed, the basis for the trial court's reduction of the amount of attorney fees awarded plaintiffs, i.e., that, from the detailed records provided by the parties regarding the time invested after the agreed-upon settlement of the case, their counsel simply put in too many hours in concluding that settlement, including both negotiation of the details of the settlement and drafting the settlement agreement.

Plaintiffs cite a number of cases (several of them federal court cases) in which appellate courts have reversed a trial court's reduction in the amount of fees awarded to successful counsel; they conclude by stating that this trial court's decision regarding the fees to be awarded them was "an abuse of discretion."

We disagree; as noted above, the trial court determined, based on the pleadings before it (including the detailed declaration of Jardini) that plaintiffs were entitled to be compensated for a total of 102.9 hours as opposed to the 186 hours requested by them. And it made clear where and why it thought those claimed hours ought to be reduced, i.e., not at all regarding the time before the March 16 concession by the Commission, but some in the time allegedly spent (1) on the merits of the case after March 16, (2) in the negotiation of fees, (3) on the pleadings relating to the fee award, and (4) on the preparation of the fee agreement. We disagree that such deductions constituted an abuse of discretion.

14

One helpful authority in this regard is the recent decision in *Collins, supra,* 205 Cal.App.4th 140. In that decision, the court affirmed a trial court order which required the defendant city of Los Angeles to pay only 60 percent of the attorney fees claimed by the successful parties in a section 1021.5 lawsuit, and requiring the plaintiffs to pay the remaining 40 percent from their "class restitution fund." (*Id.* at p. 157.) After citing the numerous authorities regarding the abuse of discretion standard of review of attorney fee awards, the *Collins* court held: "Apportionment of attorney fees may be appropriate under section 1021.5 if the court concludes that the successful litigant's reasonably expected financial benefits were sufficient to warrant placing part of the fee burden on the litigant. [Citations.] In those circumstances, the court may award against the opposing party the difference between the full amount of reasonable attorney fees and an amount that the successful litigant could reasonably be expected to bear. [Citation.] Thus, an attorney fee award under section 1021.5 is not necessarily an all-or-nothing proposition." (*Id.* at pp. 155-156, fn. omitted.)

Although the trial court's decision in this case did not involve an "apportionment" of fees between the successful and the unsuccessful parties in the litigation over the validity of former section 749.7, the *Collins* decision demonstrates how far and how broadly the abuse of discretion standard of review reaches. In our view, that standard clearly validates the trial court's award of fees as to both parties to this appeal.

## IV. DISPOSITION

The order appealed from is affirmed. Each party shall bear its own costs and attorney fees on appeal.

15

_____

Haerle, Acting P.J.

We concur:

_____

Richman, J.

_____

Brick, J.*

&ast; Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.